## H. F. WILCOX OIL & GAS CO. v. WALKER et al.

No. 25048. May 8, 1934.

Rehearing Denied May 24, 1934.

Armstrong & Murphy, for petitioner.

Edwin Dabney, Proration Attorney (Hayes, Richardson, Shartel, Gilliland & Jordan, of counsel), for respondents.

OSBORN, J. This is an original action in this court by H. F. Wilcox Oil & Gas Company against Paul Walker, Roy Hughes, and J. C. Walton, constituting the Corporation Commission of the state of Oklahoma, in which petitioner seeks a writ of prohibition to prohibit the Corporation Commission from enforcing certain orders set out in said petition.

It is alleged that the Corporation Commission made and promulgated a certain order No. 6433, effective August 15, 1933, which is set out in part as follows:

"(13) The Commission further finds that numerous operators of wells drilled into the Wilcox common source of supply have produced more oil therefrom than. has been permitted by the orders of the Commission in effect from time to time since September 11, 1929, and that to secure equitable and fair taking of oil from such common source of supply, it is necessary to equalize the actual production had from the several wells, and, as a basis for the future determination of the status of each well, it is necessary that the operators of the several wells file with the Commission complete reports of the production of oil from each well for each month or fraction thereof, commencing with the 3rd day of January, 1931, down to and including the month of July, 1931."

And by section 11, p. 24, the Commission ordered as follows:

"(1) The operator of each well in said zone shall, on or before the first day of September, 1933, file with the Commission, in the office of the proration umpire, a verified statement of the gross number of barrels of oil produced each month from the 3rd day of January, 1931, to the first day of July, A. D. 1933, the number of barrels transported from the premises where produced each month, the name of the transporter and the means of transportation, and the number of barrels of oil in lease tankage on July 1, 1933, at 7 o'clock a. m.

"(2) If the operator of any well shall fail to file such statement with respect thereto on or before the 1st day of September, 1933, at 7 o'clock a. m., he shall immediately shut in such well, and shall not produce any oil therefrom, or open the same for any purpose until such statement is filed.

"(3) Each taker of oil from said zone on or before the 1st day of September, A. D. 1933, shall file with the Commission, in the office of the proration umpire, a verified statement of the number of barrels of oil taken and transported from the premises where produced each month from the 3rd day of January, A. D. 1931, to 7 o'clock a. m. July 1, 1933, the means by which the same was transported and the place of delivery thereof.

"(4) If any operator or taker shall fail to file the statement herein provided for within 10 days after the time prescribed, the proration umpire shall report the fact to the proration attorney, who shall institute such proceedings against such operator or taker as may be authorized by law for violation thereof, and to secure compliance therewith.

"(5) The proration umpire shall, as soon as possible, determine as nearly as practicable from such statements, reports previously filed with the Commission, and any other available sources of information, the gross number of barrels of oil each well in said zone was overproduced as of 7 o'clock a. m. July 1, 1933, as against the allowable production thereof under orders of the Commission in force and effect from time to time. If the proration umpire is unable to determine to his satisfaction the particular well of any operator from which any production may have been had, he shall apportion the same among the several wells of the group from which he finds the same was had, in proportion to the potentials thereof. Such overproduction of each well shall be posted by the proration umpire as soon as determined, and a certif-

icate thereof shall be immediately mailed by him to the operator of such well. The proration umpire shall preserve a record of the calculation of such overproduction or underproduction in his office, and the same shall be made available for inspection by any operator during usual office hours.

"(6) If any operator in said zone is dissatisfied with such determination of the overproduction or underproduction of any well, as so posted and certified, he shall, within 10 days of the date the same was posted, apply to the Commission, in writing, for a revision thereof, stating in the application the particular error or errors complained of, either in the allowable production credited to such well or production charged against the same for any month, and stating the correct allowable or production had during such month. The Commission will set a time for hearing such application and determination of the matter, of which notice to all persons interested shall be given by posting at the office of the proration umpire, at least 10 days prior thereto, and by mailing to the operator of such well."

By the above order it is admitted that the Commission is laying a predicate for the enforcement of various and sundry prior orders relating to the proration and production of oil in the Oklahoma City field for the following periods: (1) November 1, 1931, to January 1, 1933; (2) January 1, 1933, to April 10, 1933, at which time chapter 131, S. L. 1933, became effective. It is conceded that if said orders are void on their face, a writ of prohibition may properly be issued herein.

It is contended by petitioner that all of the prior orders relating to the production and proration of oil in the Oklahoma City field from November 1, 1931, to January 1, 1933, are void, unenforceable, and subject to collateral attack in this proceeding for the following reasons: First. That by order No. 5664, promulgated November 1, 1931, the Commission found that the Oklahoma City field was composed of four common sources of supply, to wit, the Wilcox zone; the Simpson below Wilcox zone; the siliceous lime zone; and the fault line zone; and that in determining the market demand, all of the separate sources of supply were considered together, and that the market demand for each separate source of supply was not determined, and the total market demand was not allocated to the four determined common sources of supply, by reason whereof the Corporation Commission was wholly without jurisdiction to make or enter a valid order restricting the

full production by the various operators and owners of the various wells. Second. That the Corporation Commission failed to give proper notices as required by law before making and entering the various orders, by reason whereof said orders are wholly illegal, and void and therefore unenforceable. Third. That the Corporation Commission failed to make general rules and regulations for the prevention of waste and failed to make and promulgate rules of procedure to be followed at hearings held for the purpose of regulating production, and that by reason of such failure said orders are void.

Section 11565, O. S. 1931 (sec. 7954, C. O. S. 1921), provides:

"That the production of crude oil or petroleum in the state of Oklahoma, in such manner and under such conditions as to constitute waste, is hereby prohibited."

Section 11567, O. S. 1931 (sec. 7956, C. O. S. 1921), provides:

"That the term 'waste' as used herein, in addition to its ordinary meaning, shall include economic waste, underground waste, surface waste, and waste incident to the production of crude oil or petroleum in excess of transportation or marketing facilities or reasonable market demands. The Corporation Commission shall have authority to make rules and regulations for the prevention of such wastes, and for the protection of all fresh water strata, and oil and gas bearing strata, encountered in any well drilled for oil."

Section 11568, O. S. 1931 (sec. 7957, C. O. S. 1921), provides:

"That whatever (whenever) the full production from any common source of supply of crude oil or petroleum in this state can only be obtained under conditions constituting waste, as herein defined, then any person, firm, or corporation, having the right to drill into and produce oil from any such common source of supply, may take therefrom only such proportion of all crude oil and petroleum that may be produced therefrom, without waste, as the production of the well or wells of any such person, firm, or corporation, bears to the total production of such common source of supply. The Corporation Commission is authorized to so regulate the taking of crude oil or petroleum from any or all such common sources of supply, within the state of Oklahoma, as to prevent the inequitable or unfair taking, from a common source of supply, of such crude oil or petroleum, by any person, firm, or corporation, and to prevent unreasonable discrimination in favor of any one such common source of supply as against another."

It is well established that the authority of the Commission is definitely limited to the power expressly or by necessary implication granted to it by the Constitution and the statutes. C., R. I. & P. Ry. Co. v. State, 158 Okla. 57, 12 P. (2d) 494; Southern Oil Corp. v. Yale Natural Gas Co., 89 Okla. 121, 214 P. 131; judgment affirmed, 45 S. Ct. 97, 266 U. S. 583, 69 L. Ed. 453; Atchison, T. & S. F. Ry. Co. v. Corp. Comm., 68 Okla. 1, 170 P. 1156; Oklahoma City v. Corp. Comm., 80 Okla. 194, 195 P. 498; Planters' Cotton & Gin Co. v. West Bros., 82 Okla. 145, 198 P. 855; City of Tulsa v. Corporation Commission, 96 Okla. 180, 221 P. 1000; Smith v. Corp. Comm., 101 Okla. 254, 225 P. 708; Chicago, etc., R. Co. v. State, 158 Okla. 57, 12 P. (2d) 494; American Indian Oil & Gas Co. v. Collins & Co., 157 Okla. 49, 9 P. (2d) 438; Bromide Crushed Rock Co. v. Dolese Bros. Co., 121 Okla. 40, 247 P. 74.

Every person has the right to drill wells on his own land and to take from the source below all the oil that he may be able to reduce to possession, including that coming from land belonging to others, subject to the reasonable exercise of the police power of the state to prevent unnecessary loss, destruction, or waste. Champlin Ref. Co. v. Corp. Comm., 286 U. S. 210, 52 S. Ct. 559; Indian Territory Illuminating Oil Co. v. Larkins, No. 25236, 168 Okla. 69, 31 P. (2d) 608 (opinion filed February 27, 1934). In the absence of restriction by the proper exercise of the police power of the state, the petitioner herein had such right. Whether the police power has been validly exercised by the tribunal intrusted with authority in that regard is therefore the paramount and determinative question in this case.

In the case of Wichita R. & Light Co. v. Public Utilities Commission of Kansas, 260 U. S. 48, 43 S. Ct. 51, 67 L. Ed. 124, the Supreme Court of the United States had under consideration the public utility law of Kansas (ch. 238, S. L. 1911), section 13 of which provided:

"It shall be the duty of the Commission, either upon complaint or upon its own initiative, to investigate all rates, * * * fares * * * and if after full hearing and investigation the Commission shall find that such rates * * * are unjust, unreasonable, unjustly discriminatory or unduly preferential, the Commission shall have power to fix and order substituted therefor such rate or rates * * * as shall be just and reasonable."

In passing upon the power of the Commission, the court said:

"* * * That is the general section of the act comprehensively describing the duty of the Commission, vesting it with power to fix and order substituted new rates for existing rates. The power is expressly made to depend on the condition that after full hearing and investigation the Commission shall find existing rates to be unjust, unreasonable, unjustly discriminatory, or unduly preferential. We conclude that a valid order of the Commission under the act must contain a finding of fact after hearing and investigation, upon which the order is founded, and that for lack of such a finding, the order in this case was void.

"This conclusion accords with the construction put upon similar statutes in other states. Public Utilities Commission v. Springfield Gas Co., 291 Ill. 209, 125 N. E. 891; Public Utilities Co. v. B. & O. S. W. R. R. Co., 281 Ill. 405, 118 N. E. 81. Moreover, it accords with general principles of constitutional government. The maxim that a Legislature may not delegate legislative power has some qualifications, as in the creation of municipalities, and also in the creation of administrative boards to apply to the myriad details of rate schedules the regulatory police power of the state. The latter qualification is made necessary in order that the legislative power may be effectively exercised. In creating such an administrative agency, the Legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function. It is a wholesome and necessary principle that such an agency must pursue the procedure and rules enjoined, and show a substantial compliance therewith to give validity to its action. When, therefore, such an administrative agency is required as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the needed finding. If it is lacking, the order is ineffective.

"* * * We rest our decision on the principle that an express finding of unreasonableness by the Commission was indispensable under the statutes of the state."

Applying the principles announced hereinabove to the provisions of our law above quoted relating to the power of the Commission, it is manifest that the Corporation Commission has been granted power to limit the production from the common sources of supply only when the conditions mentioned in the statute are found by it to exist, to wit: "Whenever the full production from any common source of supply of crude oil or petroleum in this state can only be obtained under conditions constituting waste." By the provisions of section 11567, O. S.

1931, the term "waste" is defined, in addition to its ordinary meaning, to "include economic waste, underground waste, surface waste, and waste incident to the production of crude oil or petroleum in excess of transportation or marketing facilities or reasonable market demands." When these conditions exist and same have been properly found by the Commission, then and then only is the Corporation Commission vested with power, authority, and jurisdiction to limit the production of crude oil or petroleum by the owner from a common source of supply to "such proportion of all crude oil and petroleum that may be produced therefrom, without waste, as the production of the well or wells of any such person * * * bears to the total production of such common source of supply." Then and then only is the Corporation Commission "authorized to so regulate the taking of crude oil or petroleum from any or all such common sources of supply * * * as to prevent the inequitable or unfair taking, from a common source of supply * * * by any person * * * and to prevent unreasonable discrimination in favor of any one such common source of supply as against another." It will be observed, therefore, that as a jurisdictional prerequisite to the exercise of authority by the Commission, there must be a finding that the total production of any common source of supply will result in waste. The orders of the Corporation Commission under consideration herein are based upon a finding that the total production of oil is in excess of the reasonable market demand. Until such jurisdictional determination has been made, based upon competent evidence, after a hearing thereon, and until after a jurisdictional determination or order has been entered relating to the particular source of supply in which the production is to be restricted, the Commission is not clothed with power to proceed to curtail and limit the production by a person from the particular source of supply. There could be no determination that waste was being committed by reason of excess of production over market demand until the market demand was properly found and determined. The orders under consideration relate to the Oklahoma City field and not to any one of the four separate common sources of supply theretofore found by the Corporation Commission to exist therein. The Corporation Commission is not vested with power to deal with the various sources of supply of oil within the state as a unit, nor to combine two or more sources of supply, but its authority relates, as specifically set forth in the statute,

to a particular common source of supply considered alone and separately, without regard to other sources of supply.

We can but repeat what was said in the case of H. F. Wilcox Oil & Gas Co. v. State, 162 Okla. 89, 19 P. (2d) 347, as follows:

"The Corporation Commission is not authorized by law to prorate the total market demand from four separate and distinct sources of supply of oil among the producing oil wells in the four separate and distinct sources of · supply, its authority to prorate production of oil being limited to proration of the market demand among the wells producing from a common source of supply."

It is one of the essential prerequisites to a valid order or judgment that the jurisdictional body promulgating same must not only have jurisdiction of the person and of the subject-matter, but must have power to render the particular judgment or order. Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; Tippins v. Turben, 162 Okla. 136, 19 P. (2d) 605; In re Sims' Estate, 162 Okla. 35, 18 P. (2d) 1077; Ward v. Cook, 152 Okla. 234, 3 P. (2d) 728; Jackson v. Carrol, 86 Okla. 230, 207 P. 735; Morgan v. Karcher, 81 Okla. 210, 197 P. 433; Oklahoma City v. Corp. Comm., 80 Okla. 194, 195 P. 498; Roth v. Union Nat. Bank, 58 Okla. 604, 160 P. 505.

The orders sought to be enforced relating to the period from November 1, 1931, to January 1, 1933, are subject to the jurisdictional defect above pointed out, and are void and not merely voidable, and they may be either disregarded or vacated and set aside at any time upon motion on the part of any parties affected thereby (Pettis v. Johnston, 78 Okla. 277, 190 P. 681), or may be collaterally attacked as in this proceeding.

The next question presented by petitioner relates to the want of jurisdiction of the Commission to make orders of proration between January 1, 1933, and April 10, 1933, by reason of failure to give notice of the hearing preceding the respective orders. It is to be noted that, beginning January 1, 1933, the Corporation Commission, in recognition of the four common sources of supply in the Oklahoma City field, desisted from the practice of determining the market demand for the four separate sources of supply as a unit, but determined the market demand as to each separate source of supply in said field.

It is shown by the record and admitted in the briefs that no notice by publication

was given for the hearings on which orders were made during the period of time under consideration. The practice of the Commission in this regard was to make a finding of a market demand for a certain calendar month, and to make an order of proration based thereon, and in said order to continue said cause to a certain definite date, fixed within said period of time during which the order of proration was effective for a future time for hearing for the purpose of determining the market demand and making a further order of proration for the succeeding calendar month. Illustrative of the practice, the Commission, on December 23, 1932, found a certain market demand for the period from January 1, 1933, to February 1, 1933, and entered an order of proration of the various wells in the separate common sources of supply during said period, and in the same order the Commission continued said cause for further hearing to the 27th day of January, 1933, at which time it made a further finding of the market demand for the period of time from February 1, 1933, to March 1, 1933, and entered an order of proration for said period. This practice has been indulged in by the Commission quite generally since the Commission has been actively attempting to enforce the proration laws of this state. It is to be noted that the Commission determines the market demand for a certain definite future period, and, containing said hearing to a definite date, then determines a new and another market demand for another definite future period, and enters another proration order based upon such new determination without further notice of the second hearing.

Section 7959, C. O. S. 1921 (sec. 6, S. L. 1915, c. 25, p. 37), provides:

"That any person, firm or corporation, or the Attorney General on behalf of the state, may institute proceedings before the Corporation Commission, or apply for a hearing before said Commission, upon any question relating to the enforcement of this act, and jurisdiction is hereby conferred upon said Commission to hear and determine the same. Said Commission shall set a time and place, when and where such hearing shall be had and give reasonable notice thereof to all persons or classes interested therein, by publication in some newspaper or newspapers, having general circulation in the state, and, in addition thereto, shall cause reasonable notice in writing to be served personally on any person, firm or corporation complained against. In the exercise and enforcement of such jurisdiction, said Commission is authorized to determine

any question or fact, arising hereunder, and to summon witnesses, make ancillary orders, and use mesne and final process, including inspection and punishment as for contempt, analogous to proceedings under its control over public service corporations, as now provided by law."

It is contended by petitioner that the notice provided by the above section given in the manner required by law is jurisdictional and that without the giving of such notice the orders of the Corporation Commission restricting the production of oil are void in that they deprive petitioner of its property without due process of law in violation of section 7, art. 2, of the Constitution, and of the 14th Amendment to the federal Constitution.

In the case of Hauschildt v. Collins, 152 Okla. 193, 4 P. (2d) 99, this court said:

"The essential elements of due process of law are: (1) Notice. (2) An opportunity to be heard. (3) An opportunity to defend. (4) An orderly proceeding adapted to the nature of the case."

In the case of Scott v. McNeal, 154 U. S. 34, 38 L. Ed. 896, it is said:

"The 14th Article of Amendment of the Constitution of the United States, after other provisions which do not touch this case, ordains 'nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.' These prohibitions extend to all acts of the state, whether through its legislative, its executive or its judicial authorities. * * *

"No judgment of a court is due process of law, if rendered without jurisdiction in the court, or without notice to the party. * * *"

See, also, Old Wayne Mutual Life Association v. McDonough, 51 L. Ed. (U. S.) 345.

In the case of Galpin v. Page, 18 Wall. (U. S.) 350, 21 L. Ed. 959, it is said:

"It is a rule as old as the law * * * that no one shall be personally bound until he has had his day in court, by which is meant until he has been duly cited to appear and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination. It is judicial usurpation and oppression, and never can be upheld where justice is justly administered."

In the case of Rodgers v. Nichols, 15 Okla. 579, 83 P. 923, this court had under consideration the statute relating to service of notice by publication, and the requirement that a copy of the petition, with the publication notice attached thereto, should be mailed to the defendant under certain conditions, as provided by section 636, Wilson's Rev. and Ann. Stats. 1903. Therein the court said:

"This provision of our statute requiring the plaintiff to mail to the defendant a copy of the petition, with a copy of the publication notice attached thereto, where the address of the defendant is known, is clear and mandatory in its terms. It is a condition precedent to the granting of a valid decree."

In the case of Chamber of Commerce of Minneapolis v. Federal Trade Commission (C. C. A.) 13 F. (2d) 673, it is said:

"While hearings before administrative bodies need not have all of the formality of judicial procedure but may be informal, and, if suited to the matter involved, rather summary (Davidson v. New Orleans, 96 U. S. 104, 107, 24 L. Ed. 616; Hagar v. Reclamation Dist. 111 U. S. 701, 708, 709, 4 S. Ct. 663, 28 L. Ed. 569; Fallbrook Irr. Dist. v. Bradley, 164 U. S. 112, 118, 17 S. Ct. 56, 41 L. Ed. 369), yet there are certain elements of fair play required by the Constitution which are necessary in any character of hearing affecting personal or property rights. In respect to hearings before administrative bodies (as well as judicial tribunals) those elements include (1) a reasonable time and place for hearing where interested parties may attend with reasonable effort (Bellingham Bay & British Columbia R. Co. v. New Whatcom, 172 U. S. 314, 319, 19 S. Ct. 205, 43 L. Ed. 460); (2) reasonable notice to interested parties (Londoner v. Denver, 210 U. S. 373, 385, 28 S. Ct. 708, 52 L. Ed. 1103; English v. Arizona, 214 U. S. 359, 29 S. Ct. 658, 53 L. Ed. 1030; Bellingham Bay & British Columbia R. Co. v. New Whatcom, 172 U. S. 314, 19 S. Ct. 205, 43 L. Ed. 460; Bauman v. Ross, 167 U. S. 548, 17 S. Ct. 966, 42 L. Ed. 270; Fallbrook Irr. Dist. v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369; Paulsen v. Portland, 149 U. S. 30, 13 S. Ct. 750, 37 L. Ed. 637; Lent v. Tillson, 140 U. S. 316, 11 S. Ct. 825, 35 L. Ed. 419); and (3) a reasonable opportunity for presentation of such evidence and argument as are appropriate to the proceeding (Londoner v. Denver, 210 U. S. 373, 385, 386, 28 S. Ct. 708, 52 L. Ed. 1103)."

In Rock Island Implement Co. v. Pearsey, 133 Okla. 1, 270 P. 846, this court said:

"Section 1472, C. O. S. 1921, relating to notice of the hearing in probate of petition to sell minor's real estate, requires, among other things, the posting of the order for a hearing in three public places in the county, and the personal service of the same on the next of kin and others interested in the estate, who reside within the county.

Held, said requirements of the statute are mandatory."

See, also, White v. Buzan, 130 Okla. 267, 267 P. 249; Staley v. Park, 125 Okla. 233, 257 P. 311; Southern Surety Co. v. Jay, 74 Okla. 213, 178 P. 95.

In Londoner v. Denver, 210 U. S. 373, 28 Sup. Ct. 708, the court says:

"In the assessment, apportionment and collection of taxes upon property within their jurisdiction, the Constitution of the United States imposes few restrictions upon the states. In the enforcement of such restrictions as the Constitution does impose, this court has regarded substance, and not form. But where the Legislature of a state, instead of fixing the tax itself, commits to some subordinate body the duty of determining whether, in what amount, and upon whom it shall be levied, and of making its assessment and apportionment, due process of law requires that at some state of the proceedings, before the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice, either personal, by publication, or by a law, fixing the time and place of the hearing. * * *"

In the case of Chicago, M. & St. Paul Ry. Co. v. Board of Railroad Commissioners, 76 Mont. 305, 247 P. 162, in holding that the order of the board requiring the carrier to construct a spur track was void because not made with due process, it is said:

"When we conceive that the board's order to the carrier to construct the spur track is in effect a taking of property, for it requires the carrier to use its property and spend its money (State of Washington ex rel. R. & N. Co. v. Fairchild, 224 U. S. 510, 32 Sup. Ct. 535) it would seem clear that an order to the carrier made without notice and without a hearing in effect would deprive the carrier of its property without due process of law. Before a valid order of the character in question can be made we hold that notice and opportunity to be heard is indispensable. Missouri Pac. Ry. Co. v. Nebraska, 217 U. S. 196, 30 Sup. Ct. 461, 54 L. Ed. 727; Union Lime Co. v. Railroad, 144 Wis. 523, 129 N. W. 605; Wichita R. & L. Co. v. Public Utility Com., supra. * * *

"It must be borne in mind that the Board of Railroad Commissioners is not a mere fact-finding instrumentality of the government. It is a quasi judicial body with power to hear and determine controversies and to make lawful orders based upon its findings."

In State of Washington ex rel. Oregon R. & N. Co. v. Fairchild, 224 U. S. 510, 32 Sup. Ct. 535, 56 L. Ed. 863, the court said:

"An order of a Railroad Commission, requiring a railroad company to expend money and use its property in a specified manner is not a mere administrative order, but is a taking of property; to be valid there must be more than mere notice and opportunity to be heard.

"The hearing which must precede an order taking property must not be a mere form, but one which gives the owner the right to secure and present material evidence. * * *"

In Jones v. Montpelier & Barre Light & Power Co. (Vt.) 120 Atl. 103, it is held:

"The authority of the Public Service Commission to make orders affecting rates and tolls depends on due notice to the parties interested."

In Hurst v. City of Burlingame (Cal.) 277 P. 308, it is said:

"Under Zoning Act of 1917, secs. 4, 5 (St. 1917, p. 1420), requiring notice and hearing as to possible effect of zoning ordinance on property rights, action of legislative body becomes quasi judicial in character, and statutory notice and hearing are necessary in order to satisfy requirements of due process, and may not be dispensed with."

In Producers' Refining Co. v. Missouri, K. & T. R. Co. of Texas (Tex.) 13 S. W. 679, it is held:

"Railroad Commission, though not part of judiciary system, has duties which are quasi judicial, and orders of commission are like judgments of court."

See, also, the following cases: Woody v. Denver & R. G. R. Co., 17 N. M. 686, 132 P. 250; City of Grand Rapids v. Powers, 89 Mich. 94, 50 N. W. 661; People v. Gilon, 121 N. Y. 551, 24 N. E. 944; Kimball v. Board of Supervisors (Iowa) 180 N. W. 988.

Authorities touching the question above discussed by the various courts may be cited practically without limit, but let us turn to the provisions of the act and to the record in this case and apply the principles above enunciated thereto.

The right of petitioner to produce oil from lands owned or leased by it is a valuable property right, and this right may not be taken or restricted except in conformity with constitutional guaranties. The statutes delegating the Corporation Commission authority to prevent waste in the production of oil plainly require that in the enforcement of said statutes the Commission shall set a time and place for hearings and give rea-

sonable notice to all persons and classes interested therein by publication in some newspaper having general circulation in the state, and cause reasonable notice in writing to be personally served on any person complained against. It is admitted in the briefs that as to the orders made between January 1, 1933, and April 10, 1933, no notice by publication nor any personal notice was given of a hearing to be had preliminary to the making of said orders. It is asserted that the petitioner had actual notice of said hearings by virtue of the order of continuance entered from month to month in the various orders, and that it participated in the hearings.

But the legislative purpose in providing for the giving of said notice was more comprehensive in its scope than merely providing notice to petitioner. A far-reaching order was about to be made by the Commission, dependent upon the determination of a controlling jurisdictional fact, to wit, not only that the total production of oil from a specific source of supply was in excess of the market demand, but a determination also of the market demand, which market demand was then to be prorated among the various wells in the proportion provided by the statutes. The Commission determined that for the month of January the market demand was and would be less than the total potential production of the particular source of supply. Upon the determination of this fact rested its authority to restrict petitioner's right to produce oil from such source of supply without limit from each of its wells. When such determination was made by the Commission, and when said period of time expired, there expired also the order of the Commission restricting production in accordance with its prior finding. The order of proration died and became functus officio, and had proper notice been given, admittedly not given as provided by law, the notice on which said order was based would likewise have served its necessary function and purpose. Before another valid order of proration could be made, a new hearing was necessary, based upon a new notice.

We point out that the public, as well as the petitioner and other producers of oil, are interested in such proceedings. The buyers of oil have a right to appear and present evidence relating to the market demand, and the producers have the right to require that the buyers and consumers of oil, and the public at large, who may be interested, have reasonable notice of the intention of the Corporation Commission to make an order which may be far-reaching in its effect, in that should the market demand be determined at an amount greatly less than the real demands of the consumers and purchasers of oil, the delicate balance of the price of said commodity may be seriously affected. A false or improvident finding of the market demand can result in grave consequences, not only to the industry itself, but to the consuming public. Such consequences were within the contemplation of the Legislature in providing the notice by publication.

In the case of State ex rel. Hopkins, Atty. Gen., v. A., T. & S. F. Ry. Co. (Kan.) 197 P. 192, it is said:

"The Public Utilities Commission cannot, by declaring that it retains jurisdiction of a matter in which it makes a complete order fixing railroad freight rates, in response to an application pending before it, defeat the necessity of giving the 30 days' notice required by section 8341 of the General Statutes of 1915, in a subsequent proceeding in the same matter to cancel the order first made."

In the body of the opinion, the court said: "A part of the order permitting the 30 per cent. rate increase reads: 'That the court herewith retains jurisdiction of this cause, of the subject-matter herein, and of the parties hereto, to make such further or additional order on the testimony now before it, or which may be hereafter taken, as may seem necessary and just.'

"Did the Public Utilities Commission have authority to make the order sought to be enforced without the notice required by section 8341 of the General Statutes of 1915? To answer this question it is necessary to examine the statutes giving to the Public Utilities Commission authority to make rates. * * *

"If a proceeding should be instituted before the Commission governing the entire schedule of railroad rates in the state, and an order should be made, the Commission could avoid the statutory requirement of notice in all subsequent railroad rate proceedings by declaring that it retains jurisdiction of the entire proceeding for the purpose of making any order in the future that it might deem necessary. The validity of the statute might be seriously questioned if it gave to the Public Utilities Commission the power here attempted to be exercised."

In view of our conclusion on the questions hereinabove discussed, it is unnecessary to discuss the third contention of petitioner.

Information has been revealed by legislative investigation and in certain judicial inquiries that large quantities of oil have been

produced by various operators in violation of the orders of the Corporation Commission purporting to have been made under the statutory authority above discussed. Competitive cupidity among the producers of oil in the various fields of the state and nation has resulted in economic conditions in the industry approaching chaos. Inequities have been numerous and apparent and nationwide in their results. The problems arising in connection with the production and transportation of this vital natural resource are intricate, and the solution by statutory enactments such as are above set forth is yet experimental. Tribunals intrusted with the authority and duty to enforce the statutory provisions in this regard must zealously see that they pursue the course definitely outlined in their delegation of authority and pursuant to constitutional limitations. The Constitution safeguards and protects private as well as public rights.

For the above reasons, the writ of prohibition is granted in so far as the Corporation Commission may seek to enforce the prior orders of the Commission limiting and restricting the producton of oil prior to April 10, 1933; but it is not hereby intended to interfere with any power or authority of the Commission granted to it by virtue of the provisions of section 28, art. 2, of the Constitution, relating to the inquisitorial powers of the Commission, with full authority to require production of books, records, etc., in any proper proceeding.

RILEY, C. J., CULLISON V. C. J., and SWINDALL, ANDREWS, McNEILL, BAYLESS, and WELCH, JJ., concur. BUSBY, J., dissents.

BUSBY, J. (dissenting). The majority opinion in this case sustains a collateral attack upon certain orders of the Corporation Commission made in connection with the proration of oil in the Oklahoma City field.

Considerable importance is attached by a majority of my associates to the decision of this court in H. F. Wilcox Oil & Gas Co. v. State, 162 Okla. 89, 19 P. (2d) 347. I do not agree with the language used in that case. However, that case is distinguishable from the case at bar and is not authority for the holding in the majority opinion herein. In that case the evidence was before this court upon which the orders of the Commission were based. Moreover, the orders therein determined to be invalid were directly attacked on appeal, whereas the orders

herein complained of are attacked collaterally in an original proceeding. Therefore, I do not consider that case as authority for holding the orders herein invalid.

In my judgment the result announced in the majority opinion is based upon an erroneous application of the principles of law which should govern in cases involving collateral attacks. Every presumption favors the validity of a judgment when attacked in a manner not provided by law, and the invalidity of a judgment should affirmatively appear from an examination of the record in order that the same be vulnerable. This presumption should likewise apply to the judgment of a tribunal of limited or special jurisdiction when it appears from the record that the subject of the controversy falls within the limits of the jurisdiction of that tribunal. The Corporation Commission is such a tribunal. Unquestionably, the jurisdiction to enforce the proration laws in connection with the production of oil has been properly conferred by statute upon that Commission. The orders of the Corporation Commission which are declared invalid on collateral attack by the majority opinion are said to be void because they recognize the existence of four different sands of common sources of supply in the Oklahoma City field, and fail to contain a specific finding that the full production cannot be accomplished from any one of the common sources of supply without waste. While a specific finding to that effect is not contained in the orders of the Commission complained of, a careful examination of those orders fails to affirmatively disclose that the full amount of production from each of the common sources of supply could be accomplished without waste. In other words, there is an absence of finding on this point. There had, however, been a previous finding that the full amount of production from the Oklahoma City field taken as a whole could not be accomplished without waste. Since every presumption should be indulged in favor of the validity of the Commission's orders when attacked collaterally, it appears to me that these orders are entitled to the benefit of that presumption, and that in this case it should be presumed that the Corporation Commission found as a matter of fact that the full production could not be accomplished from any one of the common sources of supply without waste.

It is also said in the majority opinion, in effect, that the Corporation Commission erred in continuing the case in which the orders were made from month to month

without giving a new notice each month. While such a continuation of a case from time to time, and a failure to finally decide it, may be subject to some criticism as an improper method of exercising jurisdiction which has previously been acquired, it appears to me that it does not render the orders of the tribunal void on collateral attack; for the jurisdiction of the Commission having attached, the irregularity or impropriety of the manner in which it proceeds to exercise its jurisdiction should only be open to question on appeal. The orders in question may or may not have been voidable on appeal, but they are not void on collateral attack.

Not only does the majority opinion arrive at a conclusion which I believe to be a misapplication of the principles of law, but I consider it particularly objectionable from the standpoint of its result. The orders reflect on their face that there are many operators in the Oklahoma City field. It is apparent from the face of the record before us that a number of these operators totally ignored the previous orders of the Commission, and in secret or open violation thereof overproduced their wells to the detriment of others obtaining oil from the same source of supply. On the other hand, it is apparent that a great many of the operators respected the orders and authority of the Commission, abided by and honored its rules and regulations, and produced no more than their proportionate part of the oil as established by the orders of the Commission. It is the purpose of the Commission as reflected by its recent orders to adjust this inequitable taking between the different operators, and compel those who have previously overproduced to reduce their present production until the amount of their previous overproduction has been absorbed. The effect of the majority opinion in this case is to deprive the Commission of any power to accomplish this salutary result. In other words, the operators who willfully or otherwise violated the Commission's orders and took more than their just proportion of the oil are not in the future to be penalized in any way by the Corporation Commission for having violated its orders from which they took no appeal as provided by statute. On the other hand, the operators who respected the orders of the Corporation Commission, although their neighbors took their oil while they were obeying the order of the lawfully constituted authority, are deprived of any redress. The violators of previous orders will thus be rewarded and the operator who obeyed will be penalized. In my judg-

ment this result is unsound and contrary to the principles of both law and equity, and presents a striking example of the evils that flow from what I consider a relaxation of the rules of law which should govern in cases involving collateral attack.

In this case we are likewise confronted with the question of the limit of the power of the Corporation Commission to inquire into the activity of those who produce oil for the purposes of determining whether or not previous orders have been violated. Section 28 of art. 2 of the state Constitution provides as follows:

"The records, books, and files of all corporations shall be, at all times, liable and subject to the full visitorial and inquisitorial powers of the state, notwithstanding the immunities and privileges in this Bill of Rights secured to the persons, inhabitants, and citizens thereof."

I concur in the last eight lines of the majority opinion, namely:

"but it is not hereby intended to interfere with any power or authority of the Commission granted to it by virtue of the provisions of section 28, art. 2 of the Constitution, relating to the inquisitorial powers of the Commission, with full authority to require production of books, records, etc., in any proper proceeding."

But I disagree as to the Corporation Commission not having before it herein a proper proceeding to determine the full amount of oil which was produced from any oil field during the time such field was subject to proration, with a view of reducing the production of an overproduced operator until his reduced production shall have absorbed the overproduction.

This court, in connection with the case at bar, on the 29th day of September, 1933, issued an alternative writ of prohibition, wherein it was provided:

"Now, therefore, you are commanded to desist and refrain from the enforcement of section 11 of Order No. 6433 and requiring the petitioner to file reports of production and the taking of oil from the Wilcox zone in the Oklahoma City field, as provided therein."

The effect of the peremptory writ authorized by the majority opinion is to make the above-quoted provision of the temporary writ final. This, in my judgment, is erroneous for the reason that the Commission had before it a proper proceeding in which to ascertain the information it sought, with a view of enforcing the equitable taking of

oil from a common source of supply by the various producers.

For the reasons stated, I respectfully dissent.