**CONOCO, INC., Appellant,**

**v.**

**The CORPORATION COMMISSION OF the STATE OF OKLAHOMA; composed of The Honorable James B. Townsend, Chairman; The Honorable Bob Hopkins, Vice–Chairman; and The Honorable Norma Eagleton, Commissioner, Appellees.**

**Nos. 68756–68758 and 68760.**

Supreme Court of Oklahoma.

March 15, 1988.

Rehearing Denied Nov. 22, 1988.

James W. George and Andrew J. Moore, Oklahoma City, for appellant Oil Finding Technology Corp.

Holliman, Langholz, Runnels & Dorwart by J. Michael Medina, Tulsa, for appellee Kaiser–Francis Oil Co.

Lindil C. Fowler, Jr., Gen. Counsel, Gretchen P. Hoover, Deputy Gen. Counsel, Leslie Wilson Pepper, Asst. Gen. Counsel, Oklahoma City, for appellee Oklahoma Corp. Com'n.

Monnet, Hayes, Bullis, Thompson & Edwards by James M. Peters and Robert C. Smith, Jr., Oklahoma City, for appellee Grace Petroleum.

Mock, Schwabe, Waldo, Elder, Reeves & Bryant by John R. Reeves, Jay C. Jimerson, Oklahoma City, for appellants Conoco, Inc., and Amoco Production Co.

Pray, Walker, Jackman, Williamson & Marlar by Bland Williamson and Randall G. Vaughn, Tulsa, for appellant Apache Corp.

LAVENDER, Justice:

In Order No. 310755 the Oklahoma Corporation Commission adopted amendments to six of the Commission's rules relating to the production of natural gas. Four separate appeals were filed in this Court challenging Order No. 310755.[1] In each case the challenge has been limited to the amendment of OCC–OGR 2–331. These appeals have been consolidated for consideration.

Prior to amendment of OCC–OGR 2–331 by Order No. 310755 that rule established the allowable production rate for unallocated gas wells as 50 percent of the well's wellhead absolute open flow (WHAOF) potential. The form of OCC–OGR 2–331 as amended by Order No. 310755 would reduce the allowable production rate for unallocated capable[2] gas wells to a production of one million cubic feet per day plus 25 percent of the well's WHAOF potential in excess of two million cubic feet per day.

In the appeals challenging the amendment of OCC–OGR 2–331 by Order No.

---

1. Appeal No. 68,756 was filed by Conoco, Inc., No. 68,757 was filed by Amoco Production Co., No. 68,758 was filed by Apache Corporation, No. 68,760 was filed by Oxley Petroleum and Oil Finding Technology Corp. Oxley Petroleum has subsequently been dismissed from the appeal.

In addition to these parties appellant the Corporation Commission and Kaiser–Francis Oil Co., have responded as parties appellee with briefs on appeal in support of the adoption of the amendment to OCC–OGR 2–331. Grace Petroleum has responded in opposition to motions to stay the effectiveness of the Commission's order and appeared as a party appellee at oral argument of this matter before the Court en banc.

2. A capable well is a gas well with WHAOF potential in excess of two million cubic feet per day.

310755 the appellants have raised numerous arguments concerning the validity of the Commission's action in adopting this amendment. These arguments have addressed the Commission's order on substantive grounds as well as on the ground that the Commission's procedure in the adoption of the amendment to OCC–OGR 2–331 was defective. Because we find a single argument advanced by appellants to be dispositive in this case we limit our discussion to that point.

▪▪▪ It is clearly established that the authority of the Corporation Commission relating to the conservation of oil and gas is limited to the powers expressly or by necessary implication granted to it by Constitution or by statute.[3] Further, the exercise of the Commission's authority, to be valid, must be in strict conformity with the grant of power.[4]

▪▪▪ Appellants argue that the Commission is without authority to promulgate a rule setting allowable production rates for unallocated gas wells on a state-wide basis. Our examination of the statutory basis claimed by the Commission as authority for its imposition of such a rule leads to the conclusion that the argument presented by appellants is valid.

In briefs on appeal and in oral argument before the Court the Commission has presented 52 O.S.1981 §§ 236 through 247 as providing statutory authority for its actions. However, the Commission acknowledged that it relied more specifically on the provisions of sections 239 and 243 as the source of its power to enact a rule setting a state-wide allowable. Title 52 O.S.1981 § 239 provides:

Whenever the full production from any common source of supply of natural gas in this state is in excess of the market demands, then any person, firm or corporation, having the right to drill into and produce gas from any such common source of supply, may take therefrom only such proportion of the natural gas that may be marketed without waste, as the natural flow of the well or wells owned or controlled by any such person, firm or corporation bears of the total natural flow of such common source of supply having due regard to the acreage drained by each well, so as to prevent any such person, firm or corporation securing any unfair proportion of the gas therefrom; provided, that the Corporation Commission may by proper order, permit the taking of a greater amount whenever it shall deem such taking reasonable or equitable. The said Commission is authorized and directed to prescribe rules and regulations for the determination of the natural flow of any such well or wells, and to regulate the taking of natural gas from any or all such common sources of supply within the state, so as to prevent waste, protect the interests of the public, and of all those having a right to produce therefrom, and to prevent unreasonable discrimination in favor of any one such common source of supply as against another.

Title 52 O.S.1981 § 243, provides:

The Corporation Commission shall have authority to make regulations for the prevention of waste of natural gas, and for the protection of all natural gas, freshwater, and oil-bearing strata encountered in any well drilled for oil or natural gas, and to make such other rules and regulations, and to employ or appoint such agents, with the consent of the Governor, as may be necessary to enforce this act.

No previous interpretation has been given to sections 239 or 243 by this Court regarding the authority granted the Commission under those provisions. However, appellants argue that this Court's decisions

**3.** *Gulf Oil Corp. v. State,* 360 P.2d 933 (Okla. 1961); *Carter Oil Co. v. State,* 205 Okl. 541, 240 P.2d 787 (1951); *H.F. Wilcox Oil & Gas Co. v. Walker,* 169 Okl. 33, 35 P.2d 893 (1934); and see *Helmerich & Payne, Inc. v. Corporation Commission,* 532 P.2d 419 (Okla.1975).

**4.** *Carter Oil Co. v. State,* 240 P.2d at 794; *H.F. Wilcox Oil & Gas Co. v. Walker,* 35 P.2d at 894.

in the *H.F. Wilcox Oil & Gas Co.* cases[5] in regard to a statute analogous to section 239 but dealing with production of oil[6] is fatal to the Commission's reliance on section 239. The language of the statute considered in the *Wilcox* cases provided:

That whenever the full production from any common source of supply of crude oil or petroleum in this State can only be obtained under conditions constituting waste as herein defined, then any person, firm or corporation, having the right to drill into and produce oil from any such common source of supply, may take therefrom only such proportion of all crude oil and petroleum that may be produced therefrom, without waste, as the production of the well or wells of any such person, firm or corporation, bears to the total production of such common source of supply. The Corporation Commission is authorized to so regulate the taking of crude oil or petroleum from any or all such common sources of supply, within the State of Oklahoma, as to prevent the inequitable or unfair taking, from a common source of supply, of such crude oil or petroleum, by any person, firm, or corporation, and to prevent unreasonable discrimination in favor of any one such common source of supply as against another.

In these cases this Court examined whether the quoted provision, and in particular, the language "any or all such common sources of supply," had provided the Commission the authority to regulate allowable levels of production on any basis other than on individual common sources of supply. In rejecting the proposal that the Commission had been granted authority under this provision to regulate on a broader basis, this Court stated:[7]

Applying the principles announced hereinabove to the provisions of our law above quoted relating to the power of the Commission, it is manifest that the Cor-

poration Commission has been granted power to limit the production from the common sources of supply only when the conditions mentioned in the statute are found by it to exist, to wit: "Whenever the full production from any common source of supply of crude oil or petroleum in this State can only be obtained under conditions constituting waste." By the provisions of section 11567, O.S. 1931, the term "waste" is defined, in addition to its ordinary meaning, to "include economic waste, underground waste, surface waste and waste incident to the production of crude oil or petroleum in excess of transportation or marketing facilities or reasonable market demands." When these conditions exist and same have been properly found by the Commission, then and then only is the Corporation Commission vested with power, authority, and jurisdiction to limit the production of crude oil or petroleum by the owner from a common source of supply to "such proportion of all crude oil and petroleum that may be produced therefrom, without waste, as the production of the well or wells of any such person ... bears to the total production of such common source of supply." Section 11568. Then and then only is the Corporation Commission "authorized to so regulate the taking of crude oil or petroleum from any or all such common sources of supply ... as to prevent the inequitable or unfair taking, from a common source of supply ... by any person ... and to prevent unreasonable discrimination in favor of any one such common source of supply as against another." Section 11568. It will be observed, therefore, that as a jurisdictional prerequisite to the exercise of authority by the Commission there must be a finding that the total production of any common source of supply will result in waste. The or-

---

5.  *H.F. Wilcox Oil & Gas Co. v. State,* 162 Okl. 89, 19 P.2d 347 (1933); *H.F. Wilcox Oil & Gas Co. v. Walker,* 168 Okl. 355, 32 P.2d 1044 (1934).

6.  In the *Wilcox* cases this Court interpreted the language of C.O.S.1931 § 11568. That provision is now codified as 52 O.S.1981 § 274.

7.  *H.F. Wilcox Oil & Gas Co. v. Walker,* 32 P.2d at 1047, 1048.

ders of the Corporation Commission under consideration herein are based upon a finding that the total production of oil is in excess of the reasonable market demand. Until such jurisdictional determination has been made, based upon competent evidence, after a hearing thereon, and until after a jurisdictional determination or order has been entered relating to the particular source of supply in which production is to be restricted, the Commission is not clothed with power to proceed to curtail and limit the production by a person from the particular source of supply. There could be no determination that waste was being committed by reason of excess of production over market demand until the market demand was properly found and determined. The orders under consideration relate to the Oklahoma City field, and not to any one of the four separate common sources of supply theretofore found by the Corporation Commission to exist therein. *The Corporation Commission is not vested with power to deal with the various sources of supply of oil within the state as a unit, nor to combine two or more sources of supply, but its authority relates, as specifically set forth in the statute, to a particular common source of supply considered alone and separately, without regard to other sources of supply.* (emphasis added)

Appellees, in the present case, have advanced three arguments by which they seek to distinguish the *Wilcox* holdings. They argue that the statute in consideration in the *Wilcox* cases applied to oil as distinguished from gas, that the *Wilcox* cases involved an adjudicatory order rather than a rule-making, and finally, that the language differences between section 274, as considered in *Wilcox,* and section 239, as considered here, warrant a finding of a broader grant of authority. We find no merit in any of the arguments.

No reasonable basis is advanced for finding a distinction to exist as to the interpretation of a statutory grant of authority merely because the subject matter of one of the statutes interpreted is a liquid hydrocarbon while the other statute is addressed to a gaseous hydrocarbon. Similarly, no basis for distinction may be found as to a grant of authority to make rules as opposed to authority to enter adjudications. To accept this argument so premised would result in a finding that the Commission may have authority to enter rules governing production but not have the authority to enter orders enforcing those rules. This is clearly contrary to the statutory empowerment to the Commission of the authority *to regulate production* of either oil or natural gas *when the proper jurisdictional prerequisites are found to be present.*

We also find no merit in the argument that the scope of authority granted under section 239 is greater than that under section 274 on the basis of distinctions in the wording. The language of section 274 which was examined in the *Wilcox* cases and upon which the Court's interpretation was based is identical to the operative language of section 239. The grant of authority to "regulate the taking ... from any or all such common sources of supply within the state," in both cases is clearly premised on the existence of the jurisdictional prerequisites set forth in the opening sentence of those statutes. The jurisdictional prerequisite in both cases requires a determination of production relative to market demand on a separate common source of supply basis.

The Commission, in issuance of Order No. 310755, appears to have given lip service to the argument that it was required to proceed in its regulation of production of natural gas on such a common source of supply, or "pool" basis, but rejected the procedure as impractical, stating:[8]

> In this regard, the traditional method for handling market demand problems on a common source of supply basis was to issue an order establishing pool rules. Pool rules could have a salutary effect from the standpoint that they provide theoretically a method for balancing production from wells by adjustments to

8. Order No. 310755 p. 26.

well allowables and by permitting an operator to make up lost production in using reinstated cancelled underage and the overage limit. However, there are logistical problems in creating pool rules. While it would be easy to promulgate a rule requiring all unallocated gas pools to become subject to pool rules, the Commission faces the logistical problem of converting approximately 17,000 unallocated wells to field rules. Establishing statewide pool rules would be an incredible task which would not provide any immediate relief from the problems at hand. Similarly, handling drainage concerns on a well-by-well basis is simply an invitation to litigate the correlative rights in a reservoir on a well-by-well basis. Thus, adjusting the unallocated gas allowable appears to be the only practical solution developed in this rulemaking.

In response to the Commission's assertion as to the difficulty of complying with its duty of regulation within the scope of the authority granted to it by the Legislature, we may only reiterate what we pointed out in *H.F. Wilcox Oil & Gas Co. v. State,*[9] "the Legislature alone is authorized to furnish a remedy."

As to the assertion that section 243 may furnish the Commission the authority to regulate natural gas allowables without regard to the individual conditions of market demand or production from individual sources of supply, we also find this argument to be without merit. Just as section 239 has its analog regarding the Commission's authority to regulate production of oil in section 274, section 243 has its analog in section 273, which provides:

> The term "waste" as used herein, in addition to its ordinary meaning, shall include economic waste, underground waste, surface waste, and waste incident to the production of crude oil or petroleum in excess of transportation or marketing facilities or reasonable market demands. The Corporation Commission

shall have authority to make rules and regulations for the prevention of such wastes, and for the protection of all freshwater strata, and oil and gas bearing strata, encountered in any well drilled for oil.

This section, in its previous codification as O.S.1931 § 11567, was also considered as a source of Commission authority in the *Wilcox* cases.[10]

The operative language, empowering the Commission to make rules for prevention of waste is identical in sections 243 and 273. Just as the Court in the *Wilcox* cases found the language of section 273 not to grant authority to the Commission to engage in regulation of the various common sources of supply within the state as a single unit, we find no authority for the Commission to so proceed under section 243.

Lastly, appellees have argued that the Commission's authority to enact a statewide allowable for production of natural gas should be acknowledged because it has in the past issued rules setting such an allowable. The Commission, however, has acknowledged that the issuance of these previous rules have not been subjected to a challenge in this Court. The Commission, in this argument, has put great emphasis on the rule change made in 1973 in which the Commission acted to increase the allowable from a level of 25 percent to 50 percent of WHAOF. Prior to this time the rules announced by the Commission appear to have done no more than parrot the allowable set by the Legislature by statute.[11] As pointed out, the 1973 rule-making was not subjected to challenge in this Court. The Legislature, however, apparently not recognizing the authority of the Commission to act to set a state-wide allowable, proceeded to increase the allowable set by statute to 50 percent.[12] Because the authority of the Commission to enact the rule in question has been neither implicitly nor explicitly recognized by this Court or by

---

**9.** 19 P.2d at 352.

**10.** See *H.F. Wilcox Oil & Gas Co. v. Walker,* 32 P.2d at 1046.

**11.** See 52 O.S.1981 § 29, previously codified as O.S.1931 § 11526 and C.O.S.1921 § 7913.

**12.** 1981 Okla.Sess.Laws, ch. 22 § 1.

the Legislature, we find no reason to support the presence of that authority from past events.

As we find the Commission to lack the authority to regulate the taking of natural gas by the adoption of a rule setting a state-wide allowable for natural gas production, we must necessarily vacate that portion of Order No. 310755 which purports to set such an allowable.

Order of the Oklahoma Corporation Commission VACATED IN PART.

DOOLIN, C.J., HARGRAVE, V.C.J., and SIMMS, OPALA, WILSON and SUMMERS, JJ., concur.

KAUGER, J., concurs in result.

HODGES, J., dissents.