GRISON OIL CORPORATION et al. v.
CORPORATION COMMISSION.

*99 P. 2d 134.*

No. 28821.   Feb. 13, 1940.

A. Leonard Brougham, of Oklahoma City, for plaintiffs in error.

Earl Foster, J. B. Harper, James C. Hamill, all of Oklahoma City, for defendant in error.

W. P. McGinnis and R. B. F. Hummer, both of Bartlesville, Robert M. Williams, J. H. Jarman, W. H. Brown, and Forrest M. Darrough, all of Oklahoma City; Mayo E. McKeown, H. B. Clay, D. E. Martin, W. P. Z. German, J. C. Denton, I. L. Lockewitz, Mal Kirk, all of Tulsa, and R. J. Price, of San Antonio, Tex., amici curiae.

DAVISON, J. On June 28, 1938, the Corporation Commission promulgated an order in connection with the administration of the law authorizing the proration of oil, fixing a marginal daily allowable of 165 barrels per well for all wells in the Oklahoma City field producing from the Wilcox zone.

The order was designated No. 12,430. It was entered pursuant to a hearing before the commission in cause No. 451 styled:

"In the matter of the Application of Wm. J. Armstrong, Conservation Officer, for establishment of Rules and Regulations for Taking Potentials, Adjusting Minimum Allowable, and Production of Oil in the Wilcox Zone of the Oklahoma City Field."

By its terms the order became effective July 1, 1938. By paragraphs 1 and 2 of the order it is provided:

"1. That effective as of July 1, 1938, at 7 o'clock, a. m., there is hereby established for each well in the Wilcox zone of the Oklahoma City field a marginal allowable of 165 barrels; that is, each well in said zone shall be permitted to produce 165 barrels of oil per day, or its full production if incapable of producing that amount.

"2. That the allocation to said Wilcox zone shall be divided as follows: Each well shall be allowed to produce 165 barrels, or its total production if incapable of producing 165 barrels; and the remainder of the allocation to said zone shall be divided among the wells having potentials in excess of 165 barrels as the potential of each such well bears to the total potentials of the wells having potentials in excess of the marginal allowable of 165 barrels."

The Grison Oil Corporation and H. I. Grimes, doing business as the Grimes-Abilene Oil Company, are operators in the Oklahoma City oil field and produce oil from the Wilcox zone. They present the case on appeal from the Corporation Commission, asserting the invalidity of the foregoing provisions of the order. In their original brief, they present their argument under three propositions, the first of which is:

"The orders of the Corporation Commission appealed from herein are contrary to and in conflict with the statutes of this state relating to the production of oil from the various common sources of supply thereof within the state, and are not authorized thereby."

Under this proposition the appellants challenge the power of the Corporation Commission to fix daily minimum or marginal allowable in excess of 25 barrels, prescribed by the last provision of section 6 of the Conservation Act (ch. 131, S. L. 1933). The argument relates to the general power of the commission to take an action of the character herein taken in any case as distinguished from the reasonableness and propriety of the action taken in this particular case.

The Conservation Law enacted as chapter 131, S. L. 1933, was amended by chapter 59, S. L. 1935. The matter added by amendment is not, however, germane to the questions involved in this controversy. Our allusion in this opinion to the number and context of the sections will therefore refer to them as they appear in chapter 131, S. L. 1933.

The appellants point with emphasis to sections 4, 5, and 6 of the act. Section 4 contemplates the ratable taking of oil from any common source of supply "except as otherwise authorized and/or in this act provided." Section 5 directs the commission to consider certain specific factors which might result in the production of waste and authorizes variations from the rule of ratable taking in order to combat such waste, but limits the authority therein directed to be exercised by prohibiting its use in such a manner as to unreasonably discriminate against operators not granted exceptions. And section 6 provides for a determination of the capacity of wells to produce and authorizes the lease instead of the well to be adopted as a unit of production under certain conditions and prohibits the commission from reducing the allowable production of any well below 25 barrels per day.

The appellants take the position that when proration has been established in connection with any common source of supply, production by each well therein situated must be in direct proportion to its capacity to produce, except that all wells must be allowed to produce at least 25 barrels per day by reason of section 6, and that in special cases ex-

cessive production may be allowed under authority conferred by section 5 of the act.

It is urged that, since the act does not specifically authorize a minimum allowable in excess of the 25 barrels established by statute, authority of the commission to establish such an allowable does not exist.

The appellees take the position that sections 2 and 3 of the act also claim a degree of consideration and by necessary implication vest in the commission board authority concerning rules, regulations, and orders which may be promulgated in connection with the proration of oil, and that by reason thereof almost any rule regulating the taking of oil may be promulgated which will prevent waste and is reasonably consistent with the ratable taking of oil. They also urge that the provisions of section 5 in themselves justify the departure from ratable taking involved in the case at bar.

Section 2 of the act defines waste in connection with the production of oil and imposes upon the commission the duty of making rules and regulations calculated to prevent the commission of such waste. Section 3 defines waste as applied to gas and gas energy and authorizes the promulgation of rules to prevent that type of waste.

The authority of the commission to act in connection with the prevention of waste and the proration of the production of oil is derived from the act and limited to the power expressly or by necessary implication conferred upon it. H. F. Wilcox Oil & Gas Co. v. Walker et al., 168 Okla. 355, 32 P. 2d 1044. However, the general language employed by the Legislature in sections 2 and 3 of the act vests the commission with broad powers in connection with the prevention of waste. Gilmer Oil Co. v. Corporation Commission et al., 177 Okla. 505, 61 P. 2d 22.

The legislative direction contained in section 4 of the act, prescribing that production by the various operators shall be in direct proportion to their respective abilities to produce, does not prohibit a variation from ratable production if such departure is pursuant to an authorized and justifiable order of the commission. This by reason of the clauses contained in section 4, reading "except as otherwise authorized and/or in this act provided."

The expression "and/or," as used in the exception, may embrace a multitude of situations, and when all of its implications are considered, renders the exception broad enough to comprehend any variation from ratable taking contemplated by the terms of the act or authorized by lawful order of the commission. (Concerning the meaning of "and/or," see annotation 118 A. L. R. 1367, also Tulsa County Truck & Fruit Growers Ass'n v. McMurphey, 185 Okla. 132, 90 P. 2d 927.)

The prevention of waste and the protection of correlative rights are objects to be accomplished in administering the law, and problems connected with proration must necessarily be considered with a view to the accomplishment of both objects before a balanced solution can be announced. We are of the opinion from a careful review of the entire proration act that it was the intention of the Legislature to vest in the commission sufficient authority to announce such a balanced judgment upon consideration of any and all material factors which play a part in effecting physical waste and the protection of correlative rights rather than to restrict the commission's consideration to factors specifically enumerated in section 5 or any other portion of the act. This broad conception of the authority conferred is not only apparent upon consideration of the act as a whole, but may be inferred from the reading of section 5 itself.

The introductory portion of that section reads: "The commission in making such rules and regulations as it shall deem necessary to carry out, effect the purposes, and enforce the provisions of sections 1, 2, 3, and 4 of this act, shall give consideration to," etc. The foregoing language directs consideration of

specified factors, but does not confine the commission to the things enumerated. On the contrary, it is so worded as to imply the propriety of considering other factors not enumerated. It is also provided at the close of the section that: "* * * provided that in so doing the commission shall not permit unreasonable discrimination in favor of such operators against other operators in the same common source of supply." This language comprehends authority to prevent exceptions granted from becoming a source of unratable taking, that is, to prevent discrimination through the operation of specifically authorized exceptions to ratable taking.

The prevention of waste by application of governmental power and supervision recognizes the interest of the state in the preservation and proper usage of an exhaustible natural resource of inestimable value to the general welfare of the people as a whole. It is therefore justified upon invocation of the police power of the state. Sterling Refining Co. et al. v. Walker et al., 165 Okla. 45, 47, 48, 25 P. 2d 312, 315. But private rights are also involved in the application of this power. While they must yield to its reasonable exercise, it is not contemplated that they be annihilated thereby, or that they be interfered with to any greater extent than is reasonably required by a proper exercise of the power, taking into consideration the legitimate object to be accomplished. State ex rel. Roth, Trustee, v. Waterfield, Court Clerk, 167 Okla. 209, 29 P. 2d 24. The requirement of ratable, or proportionate, taking is designed for the protection of private rights of individual operators. And while it may be said that private rights are subordinate to a proper exercise of the police power and therefore ratable taking which is designed to protect the former must yield to an application of the police power to prevent waste, it is equally true that in determining what is a proper exercise of the power, the extent to which private rights are impaired as well as the extent of the public benefit to be derived are both important factors. State ex rel. Roth, Trustee, v. Waterfield, Court Clerk,

supra. Thus prevention of waste in a normal or inconsequential amount cannot be said to justify a radical departure from percentage production. It is difficult if not impossible to prescribe any definite formula for balancing these two factors if they conflict. We shall not undertake the task in this opinion, except to observe that a rule of reasonableness must apply and that the variation from ratable taking must be no greater than the occasion warrants. The resolution of the conflict must in the first instance rest with the commission, and its judgment is, of course, presumptively correct.

But 'the foregoing considerations cannot be said to justify the establishment of a minimum or marginal allowable if, as appellants contend, the last provision of section 6, by implication, excludes the power to establish a flat allowable in excess of 25 barrels per well. The provision relied upon reads:

"* * * and provided further that regardless of anything in this act to the contrary contained or authorized the commission shall not by rule, regulation or otherwise reduce the allowable production from any oil well in this state below twenty-five (25) barrels of oil per day or its full production if it is incapable of producing twenty-five (25) barrels per day."

The appellees assert that this statutory provision is in the nature of a limitation on the power of the commission in the matter of fixing minimum allowables and that if any implication is to be drawn from the language employed, it implies the power on the part of the commission to establish a minimum allowable, but restricts that authority in such a manner as to prevent its use to reduce the allowable production from any well to a lesser amount than 25 barrels per day, thus by inference recognizing the authority to establish a greater flat allowable.

In determining the meaning of any law, ascertainment of the intent of the Legislature is the primary consideration. Inferences may be drawn from the language used. In fact, rules of construction exist which aid in determining the

proper inference to be drawn; however, such rules are an aid only and subordinate to the accomplishment of the ultimate object, namely, determining what was intended by the Legislature. Sheridan Oil Co. et al. v. Superior Court of Creek County et al., 183 Okla. 372, 82 P. 2d 832.

Neither of the inferences sought to be attached to the above-quoted language is sufficiently apparent to justify its adoption. On the contrary, we are of the opinion that no hidden significance should be attached thereto. The Legislature merely prohibited the commission from reducing the allowable production of any well below the minimum therein established. It did not thereby limit the authority of the commission to establish a greater minimum, nor did it, by the particular proviso, confer such authority, but such power exists by reason of the broader preceding provisions of the act when circumstances justify its application.

Upon consideration of the foregoing concepts, it is apparent that the commission can establish a flat minimum allowable, when and if production in accordance with such an allowable in excess of twenty-five (25) barrels per well will prevent waste in an amount sufficient to justify the departure from ratable taking involved in the establishment of such an allowable or when such an allowable may be necessary to prevent unjust discrimination.

To illustrate with general but not particular reference to the case at bar, let us assume that a great majority, say 85 per cent., of the wells producing from a common source of supply are threatened with salt water encroachment, and that in order to protect such wells production in excess of ratable taking must be allowed, and that in order to protect each of the wells thus threatened it is essential that a minimum daily production of 100 barrels be permitted for each of such wells. Let us also suppose that pro rata production when applied to the remaining 15 per cent. would not allow them to produce in excess of, say, thirty (30) barrels per day. We shall also assume that the 15 per cent. of the wells are so situated that ultimate recovery therefrom would be greatly reduced by reason of excess production allowed the wells threatened with salt water encroachment and that the most feasible way to protect the correlative rights of operators and equalize ultimate production is the establishment of a minimum allowable of 100 barrels per well. Let us likewise assume that production under such an established minimum would not result in physical waste. Under the circumstances outlined, the establishment of the minimum by order of the commission could not be contested as an improper or unauthorized application of administrative power.

Other factors, or combinations of factors, may also justify an order of this character, but the single illustration is sufficient to emphasize the existence of the power as distinguished from the justification for its application.

It follows that appellants' argument that the commission does not possess the authority to make the character of order herein presented is not well taken.

It is next urged by the appellants that:

"The evidence introduced before and considered by the commission in said cause C. D. 451 does not adequately support the findings of the commission that are specified and challenged in appellants' petition in error, nor furnish reasonable warrant or just cause for the action of the commission in making the particular orders appealed from herein, but, on the contrary, clearly shows that such findings are incorrect, that such orders are unlawful and unreasonably discriminative, and that such action was an arbitrary, unjust and oppressive abuse of the lawful authority conferred upon the commission with respect to regulating the production of oil from said Wilcox zone."

Under this proposition, appellants challenge the sufficiency of the evidence to support the order of the commission. In fact, they go even further and aver that the evidence affirmatively demonstrates the incorrectness of such order.

In approaching a treatment of the argument, cognizance must be taken of the presumption that obtains in connection with orders of the Corporation Commission presented to this court for review. Such orders are presumed to be just, reasonable, and correct. Croxton et al. v. State of Oklahoma et al., 186 Okla. 249, 97 P. 2d 11; Oklahoma Cotton Ginners' Ass'n et al. v. State et al., 174 Okla. 243, 51 P. 2d 327.

The evidence reflected by the record now before us consists of the testimony of four witnesses, all of whom expressed their opinions as experts. The substance of their respective conclusions was that the prevention of waste and the protection of correlative rights of operators in connection with the production of oil from the Wilcox zone in the Oklahoma City field could best be accomplished by the establishment of a minimum or marginal allowable applicable to all wells producing from that common supply. The opinion evidence thus introduced also embodied conclusions to the effect that 165 barrels per day, per well, was a proper level for such allowable, although the experts were not in complete harmony on the amount of the allowable.

It appears that prior to the production of the testimony a committee composed of representatives of various producers operating in the field, including among others the four witnesses whose testimony appears in the record, had made a comprehensive survey of the conditions in the Wilcox area of the Oklahoma City field and the various factors influencing the production of oil therein. It also appears that the testimony not only represents the individual views of the witnesses, but the conclusions arrived at upon conference between such representatives. Of course, the evidentiary value of the opinions given by the witnesses arises from their identification as the expressed judgment of witnesses appearing as experts, rather than from the fact that they were concurred in by others who did not testify. While the Corporation Commission was advised of the investigation and survey by the committee and its conclusion, we do not understand that the commission committed itself in any manner to be bound by the recommendations of the committee without exercising its own independent judgment on the evidence produced. The existence of the committee, therefore, does not taint the order as emanating out of an unlawful delegation of administrative authority to an unofficial group. See Associated Industries of Oklahoma v. Industrial Welfare Commission et al., 185 Okla. 177, 90 P. 2d 899.

In addition to the opinions expressed by the witnesses, various factors such as salt water encroachment, preservation of gas energy, prevention of premature abandonment, etc., which were considered in arriving at the conclusions are briefly summarized in the evidence, and in some respect detailed information was elicited; however, as appellants point out, the mass of information studied by the experts in arriving at their conclusion was not put in evidence. Nor was a demand for the production of this mass of detailed information made by appellants in connection with the cross-examinations of the witnesses.

Briefly summarized, then, the order of the commission is supported by the positive testimony of experts given in the form of conclusions. Various factors and conditions are shown to exist in the field which in proper proportions and magnitude might well justify the order; however, the detailed evidence which would show the proportion and magnitude of such factors is, to say the least, incomplete.

While the appellants discuss the situation thus presented at length from the standpoint of the evidentiary value to be attributed to the various details delineated in the evidence and undertake to demonstrate the insufficiency of such details to justify the conclusions announced, we are of the opinion that the problem must first be reviewed from the standpoint of the evidentiary value of an expert witness's conclusion when the details and facts upon which such con-

clusion is based are not fully delineated. For if the opinion of a qualified expert is, in the absence of detail justifying the opinion, of sufficient probative force to support a decision, the mere omission of supporting details cannot be said to render the evidence insufficient.

As we understand the briefs, the parties agree that the issues in controversy were subject to proof by expert testimony.

Generally speaking, the weight to be given opinion evidence when the same is properly admissible to prove a fact in issue presents a question for the jury (Fire Ass'n of Philadelphia v. Farmers' Gin Co., 39 Okla. 162, 134 P. 443; Jerry Yates and James Yates, Partners as Yates Bros., v. R. J. Garrett, 19 Okla. 449, 92 P. 142) or other fact finding body (Skelly Oil Co. v. Rose et al., 176 Okla. 313, 55 P. 2d 1019).

A witness qualified to express an opinion as an expert may do so either upon facts propounded to him in the form of a hypothetical question or from his own observation and knowledge of a given situation. The opinions expressed by the witness in the case at bar were based upon personal observation and study. When an opinion is expressed, there is a division of authority concerning the necessity of delineating the facts which constitute the basis of the conclusion. Some courts proceed upon the theory that as a general rule the opinion must be accompanied or preceded by a statement of the facts upon which the opinion is founded, while others admit the opinion upon a general showing of knowledge of the situation permitting subsequent inquiry into the basic facts upon direct or cross-examination. 20 Am. Jur. 666, 82 A. L. R. 1340, Wigmore on Evidence (2d Ed.) vol. 4, p. 117, par. 1922; and Payton v. Shipley, 80 Okla. 145, 195, p. 125. In this case we do not deem it necessary to determine whether the first-mentioned view has obtained favor in this jurisdiction, since it is apparent that the opinions of the experts who testified before the commission were based upon a mass of detailed facts which if specifically stated would have been voluminous. In 20 Am. Jur. p. 667, par. 795, it is pointed out:

"It seems clear that when the facts sought to be proved are voluminous or complicated, so that their proof will occupy much time and the evidence will be difficult of understanding, the court may permit an expert on the subject, who has made an investigation, to give his opinion without giving the details on which the opinion rests. In such cases the witness, if shown to have personal knowledge of the subject of inquiry, may give his opinion thereon without detailing to the jury all that he has observed."

Thus the opinions of the experts as introduced in this case were entitled to such weight as the commission deemed appropriate, and the failure to place in evidence all of the facts upon which such opinions were based did not destroy their probative force.

As we have previously indicated in this opinion, there was some subsequent inquiry concerning the basis of the opinions and it was developed that some factors were considered which were perhaps improper or entitled to little, if any, weight; however, it was not made to appear that the opinions would have been different had the consideration of these factors been eliminated, nor does it appear from the incomplete information elicited that the opinions stated were not completely justified upon consideration of appropriate factors.

In other words, since there was a mass of facts considered by the witnesses which were not reflected in detail by their testimony, we cannot say that their opinions were without proper foundation. Since there was no refusal to reveal these facts, appellants cannot complain of the fairness of the hearing. Since the facts that were detailed do not demonstrate the incorrectness of the order or opinion evidence upon which it was based, the probative force of the opinions was not destroyed thereby.

It is next urged by appellants that:

"The orders appealed from herein are contrary to and in conflict with the provisions of the state and federal Consti-

tutions, in that they deny to appellants and others the equal protection of the laws and deprive them of their property without due process of law."

Under this proposition it is urged in substance that the departure from ratable taking involved in the order now before us constitutes an infringement of appellants' constitutional rights, and the order must therefore be vacated.

The views previously expressed and the authorities previously cited in this opinion in treating the first proposition effectively dispose of this contention. We shall but briefly reiterate.

The enactment of the proration law, when reviewed from a constitutional standpoint, is justified upon consideration of the police power of the state. The invocation of this power in connection with the production of oil recognizes as proper an application of the power to prevent waste. Necessarily the exercise of the power curbs, restricts, and regulates individual activity. While the correlative rights of operators must be recognized and protected as far as possible and an unreasonable infringement thereof will not be judicially approved, the mere fact of infringement or compulsory departure from ratable taking does not in itself render the application of the asserted power objectionable. The question is whether the effect of the order in the prevention of waste reasonably justifies the infringement of private rights involved in its application.

The evidence before us does not demonstrate an unreasonable application of the power.

We have not in this opinion undertaken to analyze in detail the various bits of evidence or to analyze the probative force thereof as would be necessary if such evidence were offered for its independent probative force, but have accepted as prima facie correct the opinions proffered by the expert witnesses and have scrutinized very carefully such subordinate facts as were elicited to determine whether anything appeared therein to destroy the probative force of the opinion evidence offered or to demon-

strate the unreasonableness of the order made.

While we approve the order made upon the evidence offered, we deem it proper to caution the commission that upon specific demand and inquiry by interested operators a more complete delineation and analysis of basic facts should be required and the importance of various factors entering into the opinion or conclusion should be more clearly evaluated.

In their reply brief the appellants make a different and more detailed discussion of their argument; however, we have deemed it appropriate and sufficient to treat the case in accord with the classification adopted in the original brief.

The order of the commission is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, CORN, GIBSON, HURST, and DANNER, JJ., concur. OSBORN, J., absent.