OKLAHOMA NATURAL GAS CO. v. CHOCTAW GAS CO. et al.

No. 33923. Sept. 18, 1951.

Rehearing Denied Oct. 30, 1951.

*236 P. 2d 970.*

Kulp, Pinson, Lupardus & Kothe, Tulsa, for plaintiff in error.

J. B. Dudley and Paul Dudley, Oklahoma City, for Choctaw Gas Company.

Floyd Green and John Blanton, Oklahoma City, for Corporation Commission.

Mac Q. Williamson, Atty. Gen., and Richard M. Huff, Asst. Atty. Gen., for State Board of Public Affairs.

CORN, J. By this appeal the Oklahoma Natural Gas Company, hereinafter called "Company", seeks to reverse an order of the Corporation Commission directing the Company to permit the Choctaw Gas Company, hereinafter called Choctaw, to connect with the Company's gas lines and requiring the Company to sell Choctaw natural gas required for its needs at a price of 4½ cents per thousand cubic feet. Proper understanding of the question presented requires recitation of matters occurring over a long period of years prior to entry of the order appealed from.

The Carney area of the Quinton Gas Field was discovered prior to 1932. A portion of the field was owned by numerous predecessors of Choctaw. The remainder of the field was owned by various interests, predecessors of the Company. At the present time Choctaw owns five wells and operates three others in partnership with the Company. The remaining wells, about 60 in number, are owned by the Company. The two named producers are the only operators in the field. Choctaw's production is sold to the Gas Service Company, which furnishes gas to the State Penitentiary, and to the Tri-Cities Gas Company which serves three small neighboring towns. (Wilburton-Hartshorne-Haileyville.)

In 1932 Choctaw's predecessors lacked a market for their gas, while the Company's predecessors were taking large amounts of gas from the field. Application was made to the Corporation Commission to require the Company, and other purchasers, to take gas from the field on a ratable basis. Pursuant thereto, an order (No. 6518) was entered in 1933, declaring the purchasing companies to be common purchasers and ordering them to take gas from complainant's wells. This order did not fix the market demand for gas other than to order, in compliance with the statutes, that no wells should be produced at more than 25% of the open flow capacity. No further action of any kind was taken for approximately 15 years. In October, 1938, the Corporation Commission notified Choctaw by letter that its production was greatly in excess of the amount allowed under order No. 6518, and directed Choctaw to take immediate steps to equalize its taking of gas from this field. Subsequently, the Choctaw increased its taking of gas from the field in order to supply gas to three surrounding towns, for which service it had committed itself by contract.

In 1947 the Company filed application with the Commission for an order determining the amount of gas theretofore taken from the wells, and charging each well with overproduction, or crediting for underproduction, as the case might be. After a hearing the Commission entered an order (No. 20168) denying the application upon the grounds the original order (6518) was not self-executing and fixed no market demand for daily production; that to grant such order would work undue hardship upon certain producers, and that it would be unreasonable to attempt the enforcement of such an order after 15 years had elapsed. Further, that in the future the Commission should enforce ratable taking by fixing the market demand for gas to be produced, allocating the allowable production to each well upon a formula determined to be fair to all interested parties. The Commission further ordered the Conservation Department to test all wells in the pool, and then request the

Commission to fix allowable production as of August 1, 1947; that the market demand then should be determined monthly, and to protect correlative rights of interested parties ratable taking of gas from all wells in the pool should be enforced thereafter.

Pursuant to such order the conservation officer applied to the Commission for an order fixing a formula for allocation of gas production in the field. An order (No. 20539) was made on October 21, 1947, establishing a proration schedule and allocation formula for gas production from the various wells. Such order established a total, monthly allowable based upon market demand determined by the purchasers' "nominations" of the amount of gas required to meet their needs. After prescribing the allocation formula applicable to each well, the order provided that each well should have allocated to it monthly a ratable portion of the total amount taken. The manner prescribed for handling overproduction or underproduction resulting from application of this formula was set out in section 7 of this order, which further provided:

"If at any time after the effective date of this order any producer in the field shall file with the Director of Conservation a statement in writing that it as a purchaser is unable to purchase its market demand for gas in this field, because of the operations of the foregoing provisions of Section 7 of this order or if it as a producer is unable to produce or purchase the necessary amount of gas to supply the market demand of its purchaser of gas from this field, then the Director of Conservation may direct that all overages and underages in this field be held in abeyance for a period of not to exceed six months before the expiration of which period the Director of Conservation shall serve notice on all parties concerned, directing them to appear before the Commission and show cause why the Commission should not cancel overages or underages in such manner that the market demand for gas may be supplied from the field, or direct such other action that may be necessary for supplying the market demand in this field."

At this point it must be noted that the Commission recognized that gas taken by either company from its own wells without the occurrence of overproduction or underproduction depended upon the other purchaser's nominations as well as its own, unless each purchaser's nominations were directly proportionate to their respective, total allocations. Undoubtedly, the Commission contemplated the possibility of cooperation between such purchasers whereby they would agree to an interchange of gas, thus allowing each to remain within the prescribed allowable, but by the provision of the order, attempted to leave the way open for further proceedings in the event the order entered failed to achieve the desired result.

On April 2, 1948, the conservation officer filed application with the Commission calling attention to the provisions of order No. 20539 establishing an allocation formula in this gas field; that Choctaw owns five wells therein which were materially overproduced under such formula; that all overproduction had been ordered held in obeyance for the six months period, and because Choctaw's wells were overproduced, the Commission should hear and determine whether these wells should be shut in until such overproduction could be made up, or whether such overage should be canceled in order to supply the market demand, or whether some further action necessary for supplying the market demand be taken.

Following an extended hearing the Commission, on September 14, 1948, in substance, made the following findings, omitting the formal portions: (1) The State Penitentiary and three towns depend upon the Gas Service Company for natural gas, which in turn depends upon Choctaw, whose five wells in the Carney area are materially overproduced, under the formula provided in order No. 20539, while the Company is materially underproduced on its wells.

The market demand is greater than Choctaw is able to supply from its wells under such order, but to shut in these wells would inconvenience purchasers from the Gas Service Company, there being no other available supply. A price of 4 cents per thousand cubic feet had been established by the two companies, this being the price used in settlement with royalty owners but such price does not represent the value of the gas. The field should be kept under proration, but ratable taking cannot be enforced and the market demand supplied unless the Company be directed to sell to Choctaw such gas as required to meet the demands created by the penitentiary and towns named, who have prior call thereon, and that the Company should be directed to sell to Choctaw at 4½ cents per thousand cubic feet. Choctaw should be permitted to overproduce until connection of lines was made and then its wells should be shut in until its overproduction is made up. The only method of protecting the public interest, this being paramount to the Companies' interest, required interconnection of the lines; and continuation of the proration formula would prevent waste and protect the rights of royalty owners.

Based upon these findings, the Commission ordered the Company to permit Choctaw to make connection to a designated well and then sell Choctaw sufficient gas to supply its needs at 4½ cents per M. C. F., the ½ cent being allowed to the Company as a gathering charge; and, that pending making the connection, Choctaw be permitted to continue to overproduce, but this to be a charge against Choctaw's wells to be made up after the connection was made. A prospective operation of the order was contemplated by a further provision therein contained purporting to make the order binding upon Choctaw and in favor of the Company, in the event the parties' situations at some future time should be reversed.

The arguments made in behalf of the validity of the Commission's order may be summarized as follows:

First. The order appealed from merely carries into effect the specific provisions of order No. 20539, by taking the action "necessary for supplying the market demand in this field."

Second. The order permits the market demand to be met in a manner preserving the public interest in that it protects the consumers, enforces ratable taking, and protects the royalty owners.

Third. Ratable taking in the field cannot be enforced unless the Company complies with the order and sells its under production, in order that the field may be kept in balance, which, in turn, protects the royalty owners.

Fourth. The order operates equally and fairly between these parties and merely effects co-operation between them, without which the former order (20539) regulating production is ineffective.

Much of the argument in behalf of the correctness of the Commission's order is based upon decisions of this court establishing that oil and gas conservation and proration laws represent a valid exercise of the state's police power; that the authority to establish rules and regulations to effectuate conservation policies properly may be delegated to the Corporation Commission; and that the exercise of the police power properly may be adopted to changing conditions. These principles are so firmly established in this jurisdiction by judicial pronouncement as scarcely to require citation of authority therefor.

However, determination of the present case involves consideration of matters above and beyond the scope of the questions decided in prior decisions enunciating the above-mentioned principles.

Laws for the conservation of oil and gas represent a valid exercise of the police power of the state. Champlin Refg. Co. v. Corporation Commission, 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed.

1062. The authority to prescribe rules and regulations for the enforcement of conservation laws properly may be delegated to the Corporation Commission. Russell v. Walker, 160 Okla. 145, 15 P. 2d 114. This authority provides the basis for the judicially announced right of the Commission to provide for ratable taking and the authority to protect correlative rights. Patterson v. Stanolind O. & G. Co., 182 Okla. 155, 77 P. 2d 83; dismissed 305 U. S. 376, 59 S. Ct. 259, 83 L. Ed. 231. But, the Corporation Commission has only such authority as is expressly, or by necessary implication, conferred upon it by Constitution and statutes. Southwestern Light & Power Co. v. Elk City, 188 Okla. 540, 111 P. 2d 820.

The authority under which the Commission conceived its right to make this order was the duty of the Commission to conserve gas resources, expressed as follows:

"The Commission's sole interest in the case is to carry out its duties as to the prevention of waste of an exhaustible resource and the protection of correlative rights of all those concerned."

Before entering its order the Commission stated that, although its first duty was to follow the conservation law, it was felt that interest in protecting public institutions sufficiently justified the action taken.

Numerous theories are advanced in behalf of the propriety of the Commission's order. For the purposes of this opinion it is unnecessary to consider each of these separately. It is urged that this order was entered as a conservation measure to prevent waste, and as such should be sustained. It is undisputed that Choctaw's wells are severely overproduced. And, it is conceded that this condition cannot be remedied other than by Choctaw shutting in its wells, or securing gas from some other source.

The interest of the state in preserving exhaustible, natural resources is recognized as authority for exercise of the police power, and private rights necessarily yield to the exercise of such authority. However, it also is established that when private rights are subordinated to this authority, the extent such rights are thereby impaired, as well as the public benefit to be derived therefrom, must be considered in defining a proper exercise of such power. Grison Oil Corp. v. Corporation Commission, 186 Okla. 548, 99 P. 2d 134.

At this point the question is presented whether the Commission has authority to ignore a matter declared by statute to be within the limits of its authority (i. e., overproduction of gas), by ordering that such condition be permitted to continue in "the public interest," unless one corporation surrenders its property to another corporation under the terms of the order.

The very terms of the order, and the result to be accomplished, preclude its consideration as a conservation measure. The order recognizes the Choctaw's long continued overproduction of gas resources, and at the same time announces that this condition may continue to exist in the event of the Company's failure to submit to the order. The obvious effect is not proration of production and conservation of the supply, but simply to assure that Choctaw can continue to supply a market demand over and above that which it can supply upon a basis of ratable taking which, in theory, at least, was established to prevent waste and depletion of natural gas resources. Mere pronouncement that a thing is done in the public interest of conservation is insufficient to establish its validity as a conservation measure.

The mere recital contained in the Commission's order is not conclusive of the asserted "public interest." This is a matter which always is open to judicial inquiry, and determination of what is a proper exercise of the police power is not conclusive, but always subject to supervision of the courts. See Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385. Neither is

it proper, under the guise of exercising the police power to protect the "public interest," to arbitrarily interfere with private business or impose unusual or unnecessary restrictions upon a lawful occupation. Burns Baking Co. v. Bryan, 264 U. S. 504, 44 S. Ct. 412, 68 L. Ed. 813.

Although private rights yield to the exercise of the police power, they are not to be totally annihilated thereby, or interfered with to a greater extent than reasonably necessary, taking into consideration the real object to be accomplished. Grison Oil Corp. v. Corp. Comm., supra.

The Commission found, and it is urged to support such finding, that the public interest required the forcing of the interconnection of these companies' lines.

In view of the circumstances herein reflected it is unnecessary to consider any argument based upon a contemplated emergent situation which might arise by reason of the fact that Choctaw furnishes natural gas to a state institution. There is no showing that requiring Choctaw to shut in its wells will leave these towns and the State Penitentiary without any possible source of supply. In Dickinson, etc., v. Southwestern Natural Gas Co., 179 Okla. 524, 66 P. 2d 511, we reserved the question as to the rule to be applied upon a proper showing of conditions requiring protection of the public due to some emergency. Such reservation is declarative of our attitude in the present case.

The most precise answer to the arguments offered in behalf of the correctness of the order herein reviewed is found in Thompson v. Consolidated Gas Utilities Corp., 300 U. S. 55, 57 S. Ct. 364, 81 L. Ed. 510, which considered a situation somewhat analogous to the instant case. Under authority of a legislative enactment, the Texas Railroad Commission promulgated an order limiting complainant's production of gas from their own wells to an amount below their market requirements, production, transportation and marketing facilities. It was shown that such order was unnecessary to prevent waste or to protect rights of co-owners in the common reservoir. The real effect of the order was to compel those producers who had adequate transportation facilities to restrict their own production and compel them, to fulfill their contracts, to purchase gas from other producers who were without market facilities and thereby would have been prohibited from producing gas. Such order had been promulgated under statutory authority purporting to regulate gas production in the public and private interest by preventing waste and compelling ratable production. In affirming the order of the district court enjoining the enforcement of such order, the Supreme Court stated that a presumption of the existence of facts justifying the specific exercise attaches to all administrative regulations made under legally delegated authority, but such orders would not be valid if bearing no reasonable relation to protection of correlative rights or prevention of waste, or if shown to be otherwise arbitrary. And, in the body of the opinion, the court stated:

". . . And this Court has many times warned that one person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid." (Citing cases.)

It is recognized that a valid exercise of the police power (as delegated to the Corporation Commission by statute), which limits or infringes upon private rights, does not, ipso facto, violate the due process clauses of the State or Federal Constitutions. Generally regulation of a private business tinged with a "public interest" constitutes a valid exercise of the police power. Liggett Co. v. Baldridge, 278 U. S. 105, 49 S. Ct. 57, 73 L. Ed. 204; Grison Oil Corp. v. Corporation Commission, supra, and cases cited. However, the public interest required to be present before private property may be subjected to public regulation and control must

amount to something more than a desire to regulate conceived out of personal concern as to future events, convenience, or covetous use of another's property. It does not mean anything so narrow as mere curiosity, or the interests of particular localities which may be affected by the matters in question. State v. Crockett, 86 Okla. 124, 206 P. 816.

We are of the opinion that the order herein considered was not to prevent waste. Neither was it to protect correlative rights in the common source of supply, this doctrine being based upon protection of landowners and royalty owners against unfair taking by one not their lessee. Grison Oil Corp. v. Corporation Commission, 186 Okla. 548, 99 P. 2d 134. No unfair taking exists herein, other than by the Choctaw, which the coercive order seeks to protect. The police power must at all times be exercised with scrupulous regard for private rights guaranteed by the Constitution, and then only in the public interest and not for the benefit of a private company.

Judgment reversed.

GIBSON, D A V I S O N, H A L L E Y, JOHNSON, and O'NEAL, JJ., concur. WELCH, J., dissents.

WELCH, J. (dissenting). I think in the body of the opinion and in the conclusion reached there is a disregard and a violation of the principle of law stated in the first paragraph of the syllabus.

It is not shown or indicated that in this unusual case the constitutionally guaranteed private rights of "Choctaw" could have been afforded any character of protection whatever except by the order made.

It seems to me that in making the order that was made the Commission was exercising the police power with due regard for the constitutionally guaranteed private rights of "Choctaw" and in the interest of the public welfare. It seems that the Commission considered it not necessary to impose such burden on "Choctaw" as to almost destroy it in the protection of the constitutionally guaranteed private rights of "Company." The Commission apparently was diligently seeking to protect such rights of "Company", and also to give due regard to the rights of "Choctaw" to continue to exist.

I think a more thorough application of the syllabus rule above mentioned might well lead to an affirmance of the order appealed from.

There is ample authority by statute and decision sustaining the power of the Commission, and making it the duty of the Commission, to protect private rights as well as they can be protected along with the enforcement of the proration laws.

In the opinion (p. 259 of 205 Okla.) the majority assumes or indicates a conclusion that the Commission order requires "Company" to "surrender" its property to another corporation. This overlooks the fact that "Choctaw" is to pay for the gas it receives at what apparently is a fair price at the place and in the manner it is to receive it, since the opinion recites nothing to the contrary as to the price fixed.

In the opinion (p. 260 of 205 Okla.) appears this statement which I heartily approve, to wit:

"Although private rights yield to the exercise of the police power, they are not to be totally annihilated thereby, or interfered with to a greater extent than reasonably necessary, taking into consideration the real object to be accomplished. Grison Oil Corp. v. Corp. Comm., supra." (186 Okla. 548, 99 P. 2d 134.)

It seems to me the Commission was acting in compliance with that rule when it undertook to provide that although the private rights of "Choctaw" should yield to the police power, they are not totally annihilated thereby, or interfered with to a greater extent than reasonably necessary.

When "Choctaw" produces this gas it will have same as a commodity for

sale. It is in the business of producing and selling gas. When it sells some of it to "Choctaw", assuming the price is fair, it is not hurt, assuming it has ample gas to supply its other customers. Thus its business interest is promoted, and at the same time "Choctaw" is permitted to continue to exist. Why not affirm the order of the Commission and thereby approve this exercise of the police power with the demonstrated scrupulous regard for constitutionally guaranteed private rights of both "Company" and "Choctaw", and in the public welfare of the cities and the state institution referred to?