**OKLAHOMA NATURAL GAS CO.**
v.
**TEXOLA DRILLING CO., Inc.**
No. 4784.

United States Court of Appeals,
Tenth Circuit.
July 27, 1954.

---

1. Emphasis supplied.

O. L. Lupardus, Tulsa, Okl. (Carlson, Lupardus, Matthews & Holliman, Tulsa, Okl., on the brief), for appellant.

Jim Hatcher, Chickasha, Okl., (Hatcher & Bond, Chickasha, Okl., Blakeley, Walker, Dolman, Shoptaw & Wilson, Dallas, Tex., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Texola Drilling Company, Inc., brought this action to recover from Oklahoma Natural Gas Company[1] an amount alleged to be due from the production of a natural gas well owned jointly by the parties. In 1940, Texsun Drilling Company, an Oklahoma corporation, and Oklahoma Natural were the owners of certain oil and gas leases covering eighty acres of land in the Chickasha Gas Field, described as the N½SW¼ of Section 23, Township 5 North, Range 8 West, Grady County, Oklahoma. The parties entered into an agreement for the purpose of joint development and operation of the combined leases to depths below three thousand five hundred feet. The Texsun Drilling Company was to receive thirty-eight percent plus of the net proceeds from the sale of oil and gas produced

---

**1.** The parties will be referred to as "Texola" and "Oklahoma Natural".

from the leases. A producing gas well known as "Sanford 1–B" was drilled under the terms of the agreement. Thereafter, Texola acquired the rights of Texsun Drilling Company.

Oklahoma Natural was the operator of the well and, unknown to Texola, arranged for an increased allowable by attributing to the well a portion of a contiguous lease which it owned. After the increased allowable, Oklahoma Natural made payments to Texola according to a formula which reduced the percentage of the total production proportionately with the increased allowable, but the payments to Texola were substantially the same as before the increase. This appeal is from a judgment in favor of Texola for the full contract percentage.

There is very little dispute as to the facts. The agreement herein referred to fixed the ownership of the parties in the well and the production therefrom. The well drilled on the combined leases produced gas from the Charlson Sand Zone and was described as one of the largest natural gas wells in Oklahoma, if not in the world. On October 30, 1947, the Commission promulgated and entered its Order No. 20536 which established the productive limits of the different sands in this field. The order also prescribed a production and allocation formula for the ratable taking of gas from the respective producing horizons with an established acreage factor. The map attached to and made a part of the order showed that forty-one acres of the leases covered by the contract were within the productive zone of the Charlson sand. The production allowable for the well was fixed accordingly.

Oklahoma Natural was the sole owner of an oil and gas lease on forty acres of land adjoining the combined leases and described as the SE¼ of the SW¼ of

Section 23, Township 5 North, Range 8 West. Eighteen and one-half acres of this lease were within the established productive limits of the Charlson Sand Zone but were undeveloped and not attached to any well for production. During the month of February, 1949, Oklahoma Natural discussed the acreage allowable for the well with the Director of Conservation Department of the Commission, with a result that the original forty-one acre allowable was increased to forty-four and one-half acres, and the eighteen and one-half acres belonging to Oklahoma Natural were attributed or attached to the well of the parties for production. The allowable was then increased on the basis of sixty-three acres. Oklahoma Natural recomputed the percentages of interest in the increased production to which each of the co-owners was entitled in accordance with the new acreage factor and made payments to Texola on that basis. The effect of this recomputation was to reduce Texola's participation percentage in the production as provided for in the contract from thirty-eight percent plus to twenty-seven percent plus. These changes were accomplished without the knowledge or consent of Texola, and without a hearing before the Commission.[2] The case was tried to the court without a jury which held that the attribution of the eighteen and one-half acres to the jointly-owned well was "unauthorized and illegal and did not change the terms of the contract involved", and that Texola was entitled to receive the contract percentage for the total production.

Since 1913, Oklahoma has regulated the taking of natural gas from underground sources. Its statutes provide that the State Corporation Commission shall prescribe rules and regulations to regulate the taking of natural gas from com-

---

2. The trial court found that:
   "The attribution of said 18½ acres to the Sanford 1-B well was done by the defendant without any notice to the plaintiff, and without plaintiff's consent, and without a hearing before the Corporation Commission, and reduced payments of gas runs each month from March 1, 1949, to October 1952, to the date of trial, were made over the objection and protest of the plaintiff herein each month. There is no order of the Corporation Commission authorizing the attribution."

mon sources of supply to prevent waste, protect the interest of the public, and prevent unreasonable discrimination between those entitled to produce from the common source of supply. 52 O.S.A. § 239.[3]

■ The Commission has the power and authority to define and fix the boundaries of any common source of supply of gas in the state. Anderson-Prichard Oil Corp. v. Corporation Commission, 205 Okl. 672, 241 P.2d 363, appeal dismissed, 342 U.S. 938, 72 S.Ct. 562, 96 L.Ed. 698; Cities Service Gas Co. v. Peerless Oil & Gas Co., 203 Okl. 35, 220 P.2d 279, affirmed 340 U.S. 179, 189, 71 S.Ct. 215, 95 L. Ed. 190; Application of Moran, 201 Okl. 43, 200 P.2d 758; Republic Natural Gas Co. v. State, 198 Okl. 350, 180 P.2d 1009.

■■ It has the authority to provide for a ratable taking of gas to protect the correlative rights of those entitled to take from a common source of supply. Oklahoma Natural Gas Co. v. Choctaw Gas Co., 205 Okl. 255, 236 P.2d 970; Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83; appeal dismissed, 305 U.S. 376, 59 S.Ct. 259, 83 L.Ed. 231. But the Commission has only such authority as is expressly, or by necessary implication, conferred upon it by the Constitution and the statutes, and such power must be exercised in strict conformity with the grant of power. Carter Oil Co. v. State, 205 Okl. 541, 240 P.2d 787; Oklahoma Natural Gas Co. v. Choctaw Gas Co., 205 Okl. 255, 236 P.2d 970; Southwestern Light & Power Co. v. Elk City, 188 Okl. 540, 111 P.2d 820; H. F. Wilcox Oil & Gas Co. v. Walker, 168 Okl. 355, 32 P.2d 1044. After a full and complete hearing, the Commission, by its Order No. 20536, established the boundaries or the productive limits of the common source of supply of the Chickasha Gas Field and attributed different acreages to wells for production. Forty-one acres of the jointly owned lease of the parties hereto were found to be within the productive limits of the field and were attributed to the well drilled on the leases which entitled the parties to their ratable share of gas to be taken from the common source of supply. The validity of this order has been upheld by the Supreme Court of Oklahoma in two different cases. Anderson-Prichard Oil Corp. v. Corporation Commission, supra; Application of Little Nick Oil Company, 208 Okl. 695, 258 P.2d 1184. The acreage within the fixed boundaries generally determines the allowables which the owners may take gas from the common reservoir. The boundaries may be changed as actual drilling progresses and further geological data is obtained. There may be changes in the acreage attributed to any well, but these are judicial determinations to be made by the Commission only after a hearing at which those claiming correlative rights or interests in the common supply have had an opportunity to be heard. Application of Little Nick Oil Company, supra. The eighteen and one-half acres belonging to Oklahoma Natural, although within the productive limits

3. "Whenever the full production from any common source of supply of natural gas in this state is in excess of the market demands, then any person, firm or corporation, having the right to drill into and produce gas from any such common source of supply, may take therefrom only such proportion of the natural gas that may be marketed without waste, as the natural flow of the well or wells owned or controlled by any such person, firm or corporation bears to the total natural flow of such common source of supply having due regard to the acreage drained by each well, so as to prevent any such person, firm or corporation securing any unfair proportion of the gas therefrom; provided, that the Corporation Commission may by proper order, permit the taking of a greater amount whenever it shall deem such taking reasonable or equitable. The said commission is authorized and directed to prescribe rules and regulations for the determination of the natural flow of any such well or wells, and to regulate the taking of natural gas from any or all such common sources of supply within the state, so as to prevent waste, protect the interests of the public, and of all those having a right to produce therefrom, and to prevent unreasonable discrimination in favor of any one such common source of supply as against another." 52 O.S.A. § 239.

of the field, were not attributed to any well in the original order. Oklahoma Natural owned the acreage and had the legal right to produce the gas from the common supply according to the established acreage factor, but it had no right to attach the acreage to any well and produce therefrom without a formal hearing before the Commission itself, and this requirement cannot be satisfied by the ex parte action of the Director of Conservation. Application of Little Nick Oil Company, supra.[4]

■ There being no effective order increasing the production allowance for the jointly-owned well, the parties find themselves in the same situation as though the well had been over-produced and under

such circumstances a division of the net proceeds from the sale of all the gas produced must be made pursuant to the terms of the contract.

■ There is no merit to the contention of Oklahoma Natural that the entry of orders by the Commission which periodically fixes allowables was a hearing sufficient to satisfy the objections of Texola. It is true that these orders were entered after notice in compliance with Paragraph 21 of Order 20536,[5] but the purpose of these hearings was to determine the demand for gas for the ensuing period and to fix the allowables accordingly.

Judgment affirmed.

4. In the Little Nick Case [208 Okl. 695, 258 P.2d 1189], the Stanolind Oil and Gas Company sought to attach its lease to the producing well of others and participate in the production of that well to the extent of the productive acreage of its lease. Application was made to the Director of Conservation for the Commission with proof of the productive acreage of the lease. Acting upon this proof, the Director accepted the acreage as shown by the proof and attributed it to the well as requested, and increased the allowable accordingly. This was done with a formal application to the Commission, and proof of the legality of the unitization for allowables. Upon application, the Commission set aside the order and reduced the allowable. In discussing the action of the Director, the Supreme Court of Oklahoma said:

"Obviously, such an ex una parte procedure as herein attempted, and which, when called to its attention by Little Nick Oil Company, was set aside or nullified by the Commission, constitutes no such 'determination', as we have been discussing. The determination of a lease's productive acreage in a common pool, reservoir or source of supply contemplated by our Conservation Act, Title 52 O.S.1941, § 81 et seq., is a judicial determination arrived at only after a hearing, at which those claiming correlative rights in the common reservoir have had the opportunity of being heard, and at which competent and substantial evidence has been introduced to show how much of each owner's tract or acreage is likely or potentially productive. This was clearly and thoroughly demonstrated in Anderson-Prichard Oil Corp. v. Corporation

Commission, 205 Okl. 672, 241 P.2d 363, wherein this court upheld the same Commission Order (No. 20536) that fixed the Tendall Well No. 2's productive acreage, which Stanolind in this case has, by private agreement, and cooperation of Mr. Pound, sought to increase. Therefore, and in view of the fact that no authority has been shown for such procedure, resulting in said well's September allowable being unauthorizedly increased, as Little Nick Oil Company complained of, we can only conclude that same was illegal."

5. Paragraph 21 of Order 20536 reads: "The Commission will hold regular hearings, after due and proper notice to all producers and purchasers, at which each purchaser of gas in the Chickasha Field shall notify the Conservation Department of the volume of gas he anticipates taking from each of the three common sources of supply in said field during the ensuing month, and the Commission shall thereupon determine the ratable proportion of the gas to be produced from each of the three common sources of supply to be allocated to each well, making adjustments as to overage and underage as hereinabove set out; provided that, if during the month the amount of gas which a purchaser desires to take from said Chickasha Field increases or decreases from the amount originally stated to the Commission, said purchaser shall immediately notify the Conservation Department, and that the Department is hereby directed to prepare and issue a new allocation for all wells in the pool, so that each well will receive its ratable and proportionate part during that month."