**NORTHEAST OKLAHOMA ELECTRIC COOPERATIVE, INC., Appellant,**

v.

**STATE of Oklahoma ex rel. CORPORATION COMMISSION, Appellee.**

**No. 67619.**

Supreme Court of Oklahoma.

Feb. 7, 1989.

---

Logan, Lowry, Johnston, Switzer, West & McGeady by Donald K. Switzer, Vinita, for appellant.

Oklahoma Corp. Com'n by Lindil C. Fowler and Betsy R. Carr, Oklahoma City, for appellee.

HODGES, Justice.

This is an appeal from Oklahoma Corporation Commission (Commission) Order No. 304638 requiring Northeast Oklahoma Electric Cooperative (NOEC) to provide electric service to the Rice residence so long as a life-threatening situation exists, notwithstanding the Rices' inability to pay their account. Three issues are presented: (1) Does the application of Electric Rule 40(I) result in a "taking" of property in violation of the Oklahoma Constitution? (2) Is Electric Rule 40(I) too indefinite to be "just and reasonable" as required by the Oklahoma Constitution? (3) Was the Commission's order issued in an unreasonable, arbitrary and capricious manner, thus rendering it void? We answer all three questions in the negative and affirm the Commission's Order.

The Rices first began receiving electrical service from NOEC in November, 1981. For the next three years their electric bill was minimal, four to eight dollars per month. In December, 1984, at the Rices' request, service was increased to 200 amps. to accommodate a double-wide mobile home. The bill for service during January, 1985, jumped to $413.00. From February, 1985, until March, 1986, the Rices' electric bill ranged from $135.00 to $200.00 per month. These bills were based on meter readings made by Mr. Rice and reported to NOEC. On March 10, 1986, NOEC's independent contractor meter reader determined that Mr. Rice had failed to report $1,700.00 worth of electrical use. A NOEC employee confirmed the reading, observed evidence of meter tampering and warned Mr. Rice.

NOEC's collection clerk met with Mr. Rice who admitted he had under-reported his meter in an attempt to pay no more than $150.00 per month. He refused to enter a deferred payment plan and refused to pay more than $150.00 per month for past, current or future bills. After due notice, NOEC disconnected service to the Rice residence on June 18, 1986. The Rices were ineligible for any public assistance in paying their bill.

On July 14, 1986, Mrs. Rice sustained a heat stroke and was hospitalized. Her doctor wrote the Commission explaining that, because Mrs. Rice suffered from coronary artery disease and chronic obstructive pulmonary disease, she could not survive without air conditioning. A Commission staff member informed NOEC's general manager of the life-threatening situation, but

NOEC refused to restore service to the Rices unless ordered by the Commission. Mrs. Rice was scheduled to be released from the hospital on August 28, 1986.

Following a hearing on August 27, 1986, the Commission issued an emergency order directing NOEC to reconnect service to the Rice household. NOEC immediately complied with the order. On September 23, 1986, a hearing on the merits was held before the Commission en banc. The temporary effectiveness of the emergency order was extended and the Commission took the matter under advisement. The Commission issued Order No. 304638 on October 23, 1986, requiring NOEC to continue providing service to the Rice household, in compliance with Electric Rule 40(I), as long as a life-threatening situation exists. From that order NOEC appeals.

NOEC is a cooperative, non-profit, membership corporation. Because it operates as a monopoly within its certified territory, it is the only source of electric service available to the Rice household. As a public utility, NOEC is subject to reasonable regulation by the Commission.[1] The challenged regulation, Electric Rule 40(I),[2] provides for continuance or reconnection of service to a consumer whose life would be threatened without electric service.

### I.

■ NOEC asserts the application of Electric Rule 40(I) results in a "taking" of property in violation of article 2, sections 23 and 24 of the Oklahoma Constitution.[3] The instant facts, however, do not present that situation.

The Commission's order did not cancel the Rices' debt or require NOEC to provide service free of charge. The order provided:

> Should Mr. Rice's financial circumstances change so that he is able to pay his account in full, he would have the responsibility to pay the account in full. Should the life-threatening situation cease to exist, Mr. Rice would have the responsibility to pay the account in full.

1. Okla. Const. art. 9, § 18.

2. Rule 40. Discontinuance of Service

....

(I) Special Provisions on Discontinuance of Residential Service; Life-threatening Situation. When a consumer to whom service is rendered is unable to pay the account in full and does not enter into a Minimum Deferred Payment Plan, the utility shall suspend discontinuance of service, or reconnect if disconnected, if the consumer:

(1) Completes a Life-threatening Certificate on a form prescribed by the utility stating that discontinuance of service will give rise to a life-threatening situation to the consumer or other permanent resident of the premises where service is rendered.

(2) Notifies the utility by telephone that discontinuance of service will give rise to a life-threatening situation to the consumer or other permanent resident of the premises where service is rendered. The consumer shall confirm such telephone notification by presenting a written certificate on a form prescribed by the utility to the utility within 72 hours thereafter or be subject to discontinuance of service.

(3) A Life-threatening Certificate is effective for only one monthly billing period, but may be renewed by the consumer upon the following conditions:

(a) The consumer must notify the utility of intention to renew the certificate;

(b) Upon request of the utility, furnish to the utility at the consumer's expense verification of the life-threatening situation by a physician, licensed practioner (sic) of the healing arts, public health official, or a government social service official. The consumer shall have the option of selecting who will make the verification.

(c) Such certificate shall identify the medical emergency, specify the effect of the discontinuance of service, and specify the time period during which discontinuance of service will give rise to a substantial risk of death or a grave impairment of the health of the consumer or other permanent resident of the premises where service is rendered.

(4) Life-threatening Situation. For purposes of these rules, a life-threatening situation is one where discontinuance of service will give rise to a substantial risk of death or a grave impairment of the health of the consumer or other permanent resident of the premises where service is rendered.

Corporation Commission General Rules and Regulations Governing the Operations of Electric Utilities (effective April 23, 1985).

3. Section 23 provides "[n]o private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner...." Section 24 requires that "[p]rivate property shall not be taken or damaged for public use without just compensation."

If Mr. Rice does not discharge his responsibility under these circumstances he would be subject to disconnect procedures.

The Rices were not relieved of their obligation to pay for electric service.[4]

Electric Rule 40(I) does not allow those who are unwilling or unable to pay for electric service to shirk their debt. The rule merely prevents an electric utility from withholding service from those who could die without it. If, however, the account ultimately becomes uncollectable, NOEC will be compensated through its authorized rates. The Commission noted in its order that it "has historically allowed expenses for uncollectable accounts as a legitimate expense of doing business." No unconstitutional "taking" occurred.

## II.

■ Nor is Electric Rule 40(I) too indefinite to be "reasonable and just." The Oklahoma Constitution[5] empowers the Commission to regulate utilities by promulgating "reasonable and just" rules.

NOEC argues that a rule must provide a reasonable standard to determine when it is applicable. Specifically, it claims Electric Rule 40(I) presents no standard by which the Commission's staff could determine when a disconnected customer was no longer a "consumer" afforded the rule's protection. At the Commission hearing NOEC urged the Rices could not be consumers because their service had been validly terminated for non-payment.

In adopting a broad definition of "consumer" the Commission observed that Electric Rule 40(I) requires an electric utility to "suspend discontinuance of service, or reconnect if disconnected" a consumer in a life-threatening situation. The Commission noted that a narrow definition of "consumer" as one who currently receives service would ignore the "reconnect if disconnected" language of the rule. Electric Rule 40(I) provided the Commission reasonable standards by which it could be applied.

## III.

■ This conclusion also disposes of NOEC's claim that the Commission's order is void because it was issued in an unreasonable, arbitrary and capricious manner. NOEC maintains that proper termination of service for non-payment marked the end of its duty to the Rices making the application of Electric Rule 40(I) an unreasonable exercise of the Commission's police power. While we agree that "[t]he police power must at all times be exercised with scrupulous regard for private rights guaranteed by the Constitution,"[6] we find no infringement of NOEC's constitutional rights.

This is not a situation in which the Commission is attempting to effect social policy by preferring one class of rate-payers over another. The Commission did not advantage, as NOEC asserts, a "class of persons whom the regulators of the moment wish, for whatever fleeting reason, to favor." Electric Rule 40(I) applies only to those narrow instances in which lack of electric

---

**4.** Electric Rule 40(I) was recently amended to include the following provision:

   (5) Continuation or reconnection of service under this rule shall not in any way relieve the customer of liability incurred for utility services.

Electric Rule 40(I)(5) (issued May 23, 1988 per Order No. 326194).

**5.** The Commission's power and authority is derived from the following section of the Oklahoma Constitution:

   The Commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public

duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the Commission may, from time to time alter or amend....
Okla. Const. art. 9, § 18.

**6.** *Oklahoma Natural Gas Co. v. Choctaw Gas Co.*, 205 Okla. 255, 261, 236 P.2d 970, 977 (1951).

 

service threatens human life. The rule provides reasonable standards for the Commission to follow and its application does not infringe a utility's constitutional rights.

ORDER AFFIRMED.

SIMMS, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

HARGRAVE, C.J., and LAVENDER, J., concur in result.

OPALA, V.C.J., and KAUGER, J., dissent.